UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VIOLA JOHNSON

and

KEVIN R. McCARTHY,
Trustee for the Estate of Viola Johnson,

    Plaintiffs,

      v.

LONG BEACH MORTGAGE LOAN
TRUST 2001-4, *et al.*,

    Defendants.

Civil Action No. 05-0644 (CKK)

**MEMORANDUM OPINION**
(August 4, 2006)

    Plaintiff Viola Johnson, an elderly District of Columbia retiree, together with the trustee of her bankruptcy estate (collectively "Plaintiff"), bring the above-captioned action against a mortgage broker, two lenders, and several related entities who sold her two home loans, alleging *inter alia* that the companies took advantage of her age and lack of sophistication to charge excessive fees while failing to make mandatory disclosures under the Truth in Lending Act ("TILA"). Plaintiff seeks rescission of the loans, restitution, and damages under several legal theories. *See* Compl. ¶¶ 33-38 (Count I – Violations of the District of Columbia Consumer Protection Act ("DCCPA"), ¶¶ 39-45 (Count II – Common Law Fraud), ¶¶ 46-52 (Count III – Unconscionability), ¶¶ 53-61 (Count IV – Violation of the Usury Statute), ¶¶ 62-69 (Count V – Violations of D.C. MLBA), ¶¶ 70-76 (Count VI – Breach of Fiduciary Duty), ¶¶ 77-82 (Count VII –

Conspiracy), ¶¶ 83-87 (Count VIII – Aiding & Abetting the Deception of Ms. Johnson),

¶¶ 88-93 (Count IX – Negligence), ¶¶ 94-103 (Count X – Negligent Supervision), ¶¶ 104-

107 (Count XI – TILA Violations), ¶¶ 108-115 (Count XII – Declaratory Relief of a

Valid Rescission Under TILA), ¶¶ 116-119 (Count XIII – Derivative Claims Against

Washington Mutual). *See infra* at 5 (Table 1).

   In response to Plaintiff's Complaint Defendants EquiCredit Corporation of

Maryland and EquiCredit Corporation of the District of Columbia filed a [4] Motion to

Dismiss, and Defendants Long Beach Mortgage Company, Long Beach Mortgage Loan

Trust 2001-4, and Washington Mutual jointly filed a [8] Motion to Dismiss ([4] and [8]

are collectively referred to as "Defendants' Motions to Dismiss"), followed by Plaintiff's

collective Opposition and Defendants' Replies. Upon consideration of the filings before

the Court, the attached exhibits, the relevant case law, and the entire record herein, the

Court shall grant Defendants' Motions to Dismiss with respect to Count IV and Count

XI, grant-in-part and deny-in-part Defendants' Motions to Dismiss with respect to Counts

XII and XIII, and deny Defendants' Motions to Dismiss with respect to the remaining

Counts.[1] The Court further holds that it may exercise personal jurisdiction over

Defendant Long Beach Mortgage Loan Trust 2001-4 ("the Trust"). The Court's

disposition is summarized *infra* at 6-7 and 65-66 (Table 2).

---

[1] On July 19, 2006, the Court dismissed the instant case with respect to Mortgage USA
for failure to serve process. As a result, Counts V and VI were eliminated in their
entirety. *See* Order of July 19, 2006, Civil Case No. 05-644 (CKK).

# Table of Contents

Summary Tables: Counts, Disposition, and Dates .......................................................... 5
    Table 1:  Plaintiff's Counts ........................................................................................ 5
    Table 2:  The Court's Disposition .............................................................................. 6
    Table 3:  Important Dates .......................................................................................... 7
I: BACKGROUND ............................................................................................................ 8
II: LEGAL STANDARDS ................................................................................................ 11
III: DISCUSSION ............................................................................................................ 12
    A.  *Defendant Long Beach Mortgage Loan Trust 2001-4's Motion to Dismiss for*
        *Lack of Personal Jurisdiction* ............................................................................ 12
        1.  Legal Standards for Exercise of Personal Jurisdiction .................................. 12
        2.  Personal Jurisdiction Over Long Beach Mortgage Loan Trust 2001-4 ......... 14
            (a)  The Trust's Contacts With the District of Columbia Related to the
                Controversy *Sub Judice* ...................................................................... 15
            (b)  The Trust's First Contact:  Holding a Security Interest in the Ms.
                Johnson's Property .............................................................................. 16
            (c)  The Trust's Second Contact:  Taking Assignment of Ms. Johnson's
                Mortgage Note ..................................................................................... 18
            (d)  Discussion of Relevant Cases from Other Jurisdictions ........................ 21
    B.  *Plaintiff's Fraud and Negligent Supervision Claims Against Long Beach*
        *Mortgage Company* ........................................................................................... 24
    C.  *Plaintiff's Unconscionability Claims* ............................................................... 26
        1.  Plaintiff's Claim of Unconscionability Under D.C. Code § 28:2-302 .......... 26
        2.  Plaintiff's Claim of Unconscionability Under the Common Law ................. 27
        3.  Plaintiff's Claim of Unconscionability Under D.C. Code § 28-3904(r) ....... 30
    D.  *Statutes of Limitations* ..................................................................................... 32
        1.  TILA Claims ................................................................................................. 34
            (a)  Civil liability under TILA .................................................................... 34
            (b)  Declaration of a Valid Rescission ........................................................ 35
        2.  Dates of Accrual of Plaintiff's D.C. Claims ................................................. 37
            (a)  Accrual of a Cause of Action Under the Discovery Rule ...................... 38
            (b)  The Importance of Mortgage USA's Alleged Fiduciary Duty to Ms.
                 Johnson ................................................................................................ 43
            (c)  Matters outside the pleadings ............................................................... 47
        3.  D.C. Claims – applicable statutes of limitations .......................................... 48
            (a)  Plaintiff's Usury Statute Claims .......................................................... 49
            (b)  Plaintiff's Other D.C. Claims .............................................................. 50
            (c)  The Intertwining Doctrine .................................................................... 52
        4.  Plaintiff's arguments for tolling applicable statutes of limitations ............... 53
            (a)  Bankruptcy ........................................................................................... 54
            (b)  Damages and Rescission in Recoupment Under TILA ......................... 55
            (c)  Equitable Tolling ................................................................................. 57
    E.  *Plaintiff's Derivative Claims Pursuant to D.C. Code §§ 28-3808 and 28-3809,*
        *and 16 C.F.R. § 433* .......................................................................................... 61

1. Plaintiff's Derivative Claims Against Washington Mutual Pursuant to D.C. Code § 28-3808 ............................................................................ 61
2. Plaintiff's Derivative Claims Against Washington Mutual and Long Beach Mortgage Company Pursuant to D.C. Code § 28-3809 ................................ 62
3. Plaintiff's Derivative Claims Against Washington Mutual and/or Long Beach Mortgage Loan Trust 2001-4 Pursuant to 16 C.F.R. § 433.2........................ 63
Table 2: The Court's Disposition.............................................................................. 65
**IV: CONCLUSION**...................................................................................................... 67

## Summary Tables: Counts, Disposition, and Dates

### Table 1: Plaintiff's Counts

| Count | Title | Defendant(s) | Compl. ¶¶ |
|---|---|---|---|
| I | Violations of the District of Columbia Consumer Protection Act, D.C. Code Sections 3901 *et. seq.* | All Defendants | 33-38 |
| II | Common Law Fraud | Mortgage USA, Long Beach | 39-45 |
| III | Unconscionability, D.C. Code Section 28:2-302 | Mortgage USA, Long Beach, Washington Mutual | 46-52 |
| IV | Violation of the Usury Statute | Mortgage USA, EquiCredit, Long Beach | 53-61 |
| V | Violations of D.C. MLBA | Mortgage USA | 62-69 |
| VI | Breach of Fiduciary Duty | Mortgage USA | 70-76 |
| VII | Conspiracy | Mortgage USA, Long Beach | 77-82 |
| VIII | Aiding & Abetting the Deception of Ms. Johnson | Mortgage USA, Long Beach | 83-87 |
| IX | Negligence | All Defendants | 88-93 |
| X | Negligent Supervision | Mortgage USA, EquiCredit, Long Beach | 94-103 |
| XI | TILA Violations | Mortgage USA, EquiCredit, Long Beach | 104-107 |
| XII | Declaratory Relief of a Valid Rescission Under TILA | EquiCredit, Washington Mutual | 108-115 |
| XIII | Derivative Claims Against Washington Mutual, All claims against all other Defendants pursuant to D.C. Code §§ 28-3808 and 3809 16 C.F.R. § 433 | Washington Mutual, [Long Beach] | 116-119 |

## Table 2:  The Court's Disposition

| Count | Title / Legal Basis | Disposition | Reason |
|---|---|---|---|
| I | Violations of the District of Columbia Consumer Protection Act, D.C. Code Sections 3901 *et. seq.* | Not Dismissed* | |
| II | Common Law Fraud | Not Dismissed* | |
| III | Unconscionability | | |
| | a.  Under D.C. Code § 28:2-302 | Dismissed | U.C.C. Article 2 applies to sale of goods, not loans |
| | b.  Under the common law | Not Dismissed* | Declaratory relief may be available |
| | c.  Under D.C. Code § 28-3904(r) | Not Dismissed* | 28-3904(r) allows affirmative action |
| IV | Violation of the Usury Statute | Dismissed | Statute of limitations |
| V | Violations of D.C. MLBA | Dismissed | Failure to serve |
| VI | Breach of Fiduciary Duty | Dismissed | Failure to serve |
| VII | Conspiracy | Not Dismissed* | |
| VIII | Aiding & Abetting the Deception of Ms. Johnson | Not Dismissed* | |
| IX | Negligence | Not Dismissed* | |
| X | Negligent Supervision | Not Dismissed* | |
| XI | TILA Violations – Civil Liability | Dismissed | Statute of limitations |
| XII | Declaratory Relief of a Valid Rescission Under TILA | | |
| | a.  Loan I, against EquiCredit Corp. | Not Dismissed | |
| | b.  Loan II, against Washington Mutual | Dismissed | Statute of limitations |
| XIII | Derivative Claims | | |
| | a.  Under D.C. Code § 28-3808 | Dismissed | 28-3808 claims are available only "as a matter of defense" |
| | b.  Under D.C. Code § 28-3809 against Washington Mutual | Dismissed | Washington Mutual is not a "lender" |
| | c.  Under D.C. Code § 28-3809 against Long Beach Mortgage Company | Not Dismissed* | |
| | d.  Under 16 C.F.R. § 433.2 | Dismissed | Loan II is not a "consumer credit |

| | | | contract" made "in connection with the sale of goods or services" |
|---|---|---|---|
| I-XIII | Plaintiff's arguments for tolling or modifying statutes of limitations | | |
| | a.  Bankruptcy | Fails | |
| | b.  Damages or Rescission in Recoupment | Fails | |
| | c.  Equitable Tolling | Possible** | |

\* denotes that survival of this Count depends on the existence of the alleged fiduciary relationship between Mortgage USA and Viola Johnson

\*\* denotes that survival of this theory depends on (i) the existence of the alleged fiduciary relationship between Mortgage USA and Viola Johnson, and (ii) the existence of an agency relationship between Mortgage USA and EquiCredit Corp. or Long Beach Mortgage Company

## Table 3:  Important Dates

| Date | Event | Source |
|---|---|---|
| April 2, 2001 | Loan I closes, EquiCredit as lender | Compl. ¶ 16. |
| August 17, 2001 | Loan II closes, Long Beach Mortgage Company as lender | Compl. ¶ 20; LB Mem. to Dismiss at 6 (giving exact date). |
| February 26, 2003 | Ms. Johnson files for Chapter 7 bankruptcy | Compl. ¶ 30; Pl.'s Opp'n ¶ 4. |
| February 26, 2003 | Notice of rescission of Loan II sent | Compl. ¶ 31 & Ex. B. |
| September 30, 2003 | Ms. Johnson exits bankruptcy | Compl. ¶ 32. |
| March 26, 2004 | Notice of rescission of Loan I sent | Compl. ¶ 31 & Ex. B. |
| April 15, 2004 | Original suit, 04-609 CKK, filed; later dismissed without prejudice due to lack of standing | EC Mem. to Dismiss, Ex. 1 (04-609 CKK Docket). |
| December 6, 2004 | Bankruptcy proceeding reopened | Compl. ¶ 32; Pl.'s Opp'n ¶ 23. |
| March 30, 2005 | Instant Complaint filed, Case No. 05-644 CKK | Docket [1] |
| July 19, 2006 | Case dismissed without prejudice against Mortgage USA for failure to serve | Docket [16] |

## I: BACKGROUND

For the purposes of ruling on Defendants' Motions to Dismiss, the Court accepts Plaintiff's factual allegations as true. *See Talenti v. Clinton*, 102 F.3d 573, 574 (D.C. Cir. 1996). The following allegations are adopted from Plaintiff's Complaint. They are adopted solely for the purposes of the motions at hand.

Viola Johnson is an 87-year-old widower and retiree with a twelfth grade education, living in the District of Columbia on a monthly income of $855 in Social Security and $318 in retirement benefits. Compl. ¶ 13. She lives in a house at 730 50th Street, N.E., Washington D.C., which she purchased in 1991 for $42,000 ("the property"). *Id.* ¶¶ 4, 14. In 2001 the property had an approximate value of $100,000 and was encumbered with $50,000 of debt. *Id.* ¶ 14.

In the spring of 2001, Ms. Johnson sought to borrow money to finance various home repairs. *Id.* ¶ 15. She consulted a Mortgage USA broker who worked out of the company's Hyattsville, Maryland offices. *Id.* The broker represented to Ms. Johnson that he would sell her a loan that would permit her to pay for her home repairs. *Id.* This loan ("Loan I"), a $72,000 principal amount note with 13% interest rate and 30-year term, closed on April 2, 2001, with EquiCredit ("EC") as the lender. *Id.* ¶ 16. The closing took place at Ms. Johnson's residence. *Id.* Ms. Johnson was never provided at closing with any disclosure statements or HUD-1 form, nor was Mortgage USA licensed as a mortgage broker in the District of Columbia at that time. *Id.* ¶¶ 17, 18. Finally, the broker induced Ms. Johnson to write him an $1100 check based on representations regarding his personal circumstances and his promise to repay her. *Id.* ¶ 19. However, the broker never repaid the $1100. *Id.*

In the summer of 2001, Ms. Johnson decided that she wanted additional funds to remodel her kitchen. *Id.* ¶ 20. She again contacted Mortgage USA. *Id.* Mortgage USA employee Kenneth Thompson represented that he could provide Ms. Johnson a loan ("Loan II") that would pay off Loan I and provide her with the additional $15,000 she needed for the renovations. *Id.* ¶ 20. So that Ms. Johnson would qualify for Loan II, Mr. Thompson misrepresented her $1173 monthly income on the loan application to be over $1900, so that she would qualify for the $711 monthly payments. *Id.* ¶ 21. This loan closed on August 17, 2001 with Long Beach Mortgage Company ("LB Mortgage") as the lender. LB Mortgage Mem. to Dismiss at 6. The promised $15,000 never materialized, however, as Loan II's $88,500 principal amount was consumed by paying EquiCredit $74,764 to pay off Loan I, closing costs of $6755.20, prepaid items of $686.86, and payoffs to "various creditors" totaling $1450, leaving Ms. Johnson with a cash disbursement of only $5221.80.[2] *Id.* ¶ 22. In addition, Ms. Johnson claims she was charged "unreasonable, excessive, and unlawful" settlement charges in connection with the settlement of Loan II, and that Long Beach failed to disclose her right to rescind the loan transaction. *Id.* ¶¶ 24-29, 110. All fees were disclosed on the HUD-1 Settlement Statement that Ms. Johnson signed for Loan II. *See* Compl. ¶¶ 23-25 & Ex. A (Loan II HUD-1 Form).[3]

---

[2] Plaintiff's figures seem incorrect or incomplete, but this does not in any way affect the outcome of Defendants' Motions to Dismiss. $88,500 - $74,764 - $6755.20 - $686.86 - $1450 = $4843.94

[3] Plaintiff cites to Exhibit A, the HUD-1 Form Ms. Johnson received at Loan II's closing, to confirm the information alleged in paragraphs 23 to 25 of the Complaint. Plaintiff has not submitted this exhibit to the Court. That oversight is unimportant for the purpose of ruling on the instant motions. The Court accepts Plaintiff's allegations in paragraphs 23 to 25 as true for purposes of the Motions to Dismiss.

After closing on Loan II, Ms. Johnson had to pay over half of her monthly income to mortgage costs. *Id.* ¶ 30. After an unsuccessful attempt to obtain a reverse mortgage on her home, Ms. Johnson filed for Chapter 7 bankruptcy on February 26, 2003 in District of Columbia bankruptcy court, proceeding 03-00368. *Id.*; Pl.'s Opp'n ¶ 4. On that date she also sent a notice of rescission of Loan II to Long Beach Mortgage Company. *See* Compl. ¶ 31 & Ex. B (rescission letters).[4] Ms. Johnson exited bankruptcy on September 30, 2003. Compl. ¶ 32. Later, on March 26, 2004, she sent a notice of rescission of Loan I to EquiCredit Corp. *Id.* ¶ 31. Shortly thereafter, on April 15, 2004, she filed a civil action in this Court similar to the present action. *See* EC Mem. to Dismiss, Ex. 1 (04-609 CKK Docket). This Court dismissed that suit because Ms. Johnson lacked standing to bring claims that were properly assets of her bankruptcy estate. To remedy this deficiency, Ms. Johnson reopened her bankruptcy proceeding on December 6, 2004, and listed her claims as assets of her bankruptcy estate. Compl. ¶ 32; Pl.'s Opp'n ¶ 23.

On March 30, 2005, Ms. Johnson, together with the trustee of her bankruptcy estate pursuant to an order by Bankruptcy Judge S. Martin Teel, Jr., filed the above-captioned action, wherein she charged Mortgage USA, EquiCredit, Long Beach Mortgage, and related entities with fraud, unconscionability, breach of fiduciary duty, conspiracy, aiding and abetting deception, negligent supervision, and violations of the federal Truth in Lending Act ("TILA"), D.C. Consumer Protection Act ("DCCPA"), D.C.

---

[4] Plaintiff cites to Exhibit B ("Recission Letters") to confirm the information alleged in paragraph 31 of her Complaint. Plaintiff has not submitted this exhibit to the Court. That oversight is unimportant for the purpose of ruling on the instant motions. The Court accepts Plaintiff's allegations in paragraph 31 as true for purposes of the Motions to

Consumer Protection Procedures Act ("DCCPPA"), D.C. Usury statute, and D.C.
Mortgage Lenders Brokers Act ("MLBA"). Important dates in this matter are
summarized below. *See infra* at 7 (Table 3).

## II: LEGAL STANDARDS

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the
court must construe the complaint in a light most favorable to the plaintiff and must
accept as true all reasonable factual inferences drawn from well-pleaded factual
allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.
Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C.
Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who
must be granted the benefit of all inferences that can be derived from the facts alleged.").
While the court must construe the Complaint in the Plaintiff's favor, it "need not accept
inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out
in the complaint." *Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept
the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762
(D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any
documents attached to or incorporated in the complaint, matters of which the court may
take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d
at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C.
Cir. 1993). Factual allegations in briefs or memoranda of law may not be considered
when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict
those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir.

Dismiss.

1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

### III: DISCUSSION

A.     *Defendant Long Beach Mortgage Loan Trust 2001-4's Motion to Dismiss for Lack of Personal Jurisdiction*

This case presents a question of first impression in this jurisdiction. The question is this: May this Court exercise personal jurisdiction over a non-resident defendant trust company that has no contacts with the District of Columbia other than taking assignment of a mortgage note secured by real property in this District, where the note and rights to the property are the sources of controversy in this case? For the reasons that follow, the Court finds that exercising personal jurisdiction over the defendant is authorized by the District of Columbia long-arm statute and comports with due process.

1.     Legal Standards for Exercise of Personal Jurisdiction

"A federal court may exercise personal jurisdiction over a non-resident defendant only when service of process is authorized by statute and only when consistent with due process of law." *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 519 (D.D.C. 1995) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). The court may exercise either general or specific personal jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984).[5]

---

[5] General jurisdiction is not at issue in this case. It is uncontested that Defendant Long Beach Mortgage Loan Trust 2001-4 is neither domiciled in, nor has "continuous and systematic" contacts with the District of Columbia. *See* LB Mem. to Dismiss, Ex. 1 (5/16/05 Reyes Aff.).

For specific personal jurisdiction, the federal court must first determine if the District of Columbia long-arm statute authorizes this Court to exercise personal jurisdiction. *Comsat Corp.*, 900 F. Supp. at 519-20 (citing *Edmond v. U.S. Postal Serv. Gen'l Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)).[6]  The D.C. long-arm statute permits a District of Columbia court to exercise specific personal jurisdiction over a person, "as to a claim for relief arising from the person's – (1) transacting any business in the District of Columbia, . . . (5) having an interest in, using, or possessing real property in the District of Columbia." D.C. Code § 13-423(a) (2001).  When jurisdiction is based solely on § 13-423, "only a claim for relief arising from acts enumerated in this section may be asserted against" the defendant. D.C. Code § 13-423(b) (2001).  The D.C. long-arm statute "permits the exercise of personal jurisdiction to the fullest extent permissible under the due process clause." *Mouzavires v. Baxter*, 434 A.2d 988, 990-91 (D.C. 1981).

The due process clause requires only that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A single act of a corporate agent in a state may be deemed a sufficient contact "to render the corporation liable to suit," depending on the nature and quality of the act. *Id.* at 318.  The act should be "neither irregular nor casual," but must demonstrate that the defendant purposefully availed himself of "the benefits and protection of the laws of the state, including the right to

---

[6] In federal question cases, if exercise of jurisdiction is not permitted by the D.C. long-arm statute, the Court may look to Federal Rule of Civil Procedure 4(k), which provides an independent basis for service of process and exercise of jurisdiction. Comsat Corp., 900 F. Supp. at 520.  In this case, because the Court finds that jurisdiction is provided by

resort to the courts for the enforcement of its rights." *Id.* at 319-20; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The act or activities must also give rise to the obligation sued on. *Int'l Shoe*, 326 U.S. at 320.

The burden is on the plaintiff to articulate specific acts or contacts of the defendant that prove jurisdiction can be exercised. *Baltierra v. West Virginia Board of Medicine*, 253 F. Supp. 2d 9, 13 (D.D.C. 2003) (citing *Reuber v. United States*, 787 F.2d 599 (D.C. Cir. 1986)). Factual discrepancies in the record should be resolved in favor of the plaintiff, but plaintiff's allegations need not be accepted as true. *Ulico Casualty Co. v. Fleet Nat'l Bank*, 257 F. Supp. 2d 142, 144 (D.D.C. 2003) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) and *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)). When ruling on a motion to dismiss under Rule 12(b)(2) the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Ulico Casualty Co.*, 257 F. Supp. 2d at 144.

2.    Personal Jurisdiction Over Long Beach Mortgage Loan Trust 2001-4

In this case, Defendant Long Beach Mortgage Loan Trust 2001-4 contends that it *is not subject to personal jurisdiction in the District of Columbia*. LB Mem. *to Dismiss* at 7-12. Defendant notes that due process requires that a defendant have "minimum contacts" with the forum state, including "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking

---

the D.C. long-arm statute, the Court does not reach this alternate basis.

the benefits and protections of its laws" for the state's courts to assert personal

jurisdiction over him. *See* LB Mem. to Dismiss at 8 (citation omitted).

> (a)   The Trust's Contacts With the District of Columbia Related
>        to the Controversy *Sub Judice*

Defendant submits an affidavit purporting to show it has no contacts with the

District of Columbia. Long Beach Mortgage Loan Trust 2001-4, among other things, "is

a New York trust and is administered . . . in the State of California," "maintains no

offices in the District of Columbia," "maintains no bank accounts in the District of

Columbia," "does not own, lease, or use any real estate of any kind in the District of

Columbia," "has no employees in the District of Columbia," "has not made contracts

within the District of Columbia," "does not originate loans and played no role in the

origination or closing of the loan to Viola Johnson," "does not solicit mortgage loans . . .

and does not collect payments from borrowers on mortgage loans," and does not have

physical custody of the mortgage notes. *See* LB Mem. to Dismiss, Ex. 1 (5/16/05 Reyes

Aff.). Based on this list, Defendant concludes that "Long Beach Trust has not

purposefully directed activities in D.C. sufficient to give rise to specific personal

jurisdiction in this forum." *Id.* at 10.

Defendant's lengthy list of "non-contacts" with the District of Columbia misses

the mark. This Court will predicate personal jurisdiction over Long Beach Mortgage

Loan Trust 2001-4 not on such general contacts between the Trust and D.C. unrelated to

this controversy, but rather on two specific contacts related to it.[7]  First, the Trust holds a

security interest in Ms. Johnson's property located within the District of Columbia.  *See*

Pl.'s Opp'n at 34; LB Reply at 2.  Second, the Trust took assignment of Ms. Johnson's

mortgage note, and draws a revenue stream from Ms. Johnson's mortgage payments,

even if it does not directly collect such payments.  *See* Pl.'s Opp'n at 34; LB Reply at 2.

The Court finds these contacts sufficient to satisfy both the D.C. long-arm statute and due

process requirements.

>    (b)    The Trust's First Contact:  Holding a Security Interest in
>            the Ms. Johnson's Property

First, holding a security interest in D.C. property to which the controversy *sub*

*judice* relates is sufficient to satisfy both the D.C. long-arm statute and due process

requirements.  The Trust admits that it "holds mortgage notes, including Ms. Johnson's,

secured by real property in D.C."  LB Reply at 2.  The D.C. long-arm statute permits a

District of Columbia court to exercise specific personal jurisdiction over a person, "as to

a claim for relief arising from the person's – (5) having an interest in, using, or

possessing real property in the District of Columbia."  D.C. Code § 13-423(a) (2001).  As

the Trust holds a security interest in Ms. Johnson's residence at 730 50th St., N.E.,

Washington D.C., it has an interest in real property in the District of Columbia.  *See*

Compl. ¶ 4; *Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("we have

---

[7] Defendant need look no further than to *International Shoe* to find a parallel to its
approach.  In *International Shoe*, the court recited such a list – "Appellant has no office
in Washington and makes no contracts either for sale or purchase of merchandise there.
It maintains no stock of merchandise in that state and makes there no deliveries of goods
in intrastate commerce . . . No salesman has authority to enter into contracts or to make
collections" – and then went on to find the exercise of jurisdiction reasonable based on
the contacts International Shoe Co. did have.  *See Int'l Shoe*, 326 U.S. at 314.

specifically recognized that the justifications for application of state law are not limited to ownership interests, but apply with equal force to security interests, including the interest of a mortgagee") (internal quotations omitted). The only other requirement needed to satisfy the D.C. long-arm statute is that Plaintiff's claim(s) arise from the Trust's having an interest in the property. *See* D.C. Code § 13-423(b) (2001). The Court finds that this requirement is satisfied. Plaintiff seeks a declaration that said security interest is void, and also seeks to hold the Trust liable, as an assignee, for wrongdoing in connection with the allegedly invalid creation of the security interest. Compl. ¶¶ 112-113, 118. D.C. courts read the "arising from" requirement broadly, permitting "the exercise of personal jurisdiction to the fullest extent permissible under the due process clause." *Mouzavires*, 434 A.2d at 990-91; *see also Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 5 (D.D.C. 1996) (noting plaintiff's claims must be "based on acts of a defendant that touch and concern the forum"). Thus, the Trust's holding a security interest in the property from which this dispute arises allows the Court to exercise personal jurisdiction over the Trust pursuant to the D.C. long-arm statute.

Holding a security interest in D.C. property arising out of or related to the controversy *sub judice* is also sufficient to satisfy due process requirements. It has long been held that "[w]hen claims to the property itself are the source of the underlying dispute between the parties, the forum in which the property is located would most likely have jurisdiction." *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65, 73 (D.R.I. 1995) (citing *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977)). Here, Plaintiff claims ownership of the security interest in her property based on allegedly lawful rescission of her loans, while Defendant denies any wrongdoing and thus claims the security interest as

its own. *See* Compl. ¶¶ 31, 112-113; *see generally* EC Mem. to Dismiss; LB Mem. to

Dismiss; *see also* LB Reply at 7. This contact with the District of Columbia – claimed

ownership of a security interest in forum property underlying this dispute – is "neither

irregular nor casual." *Int'l Shoe*, 326 U.S. at 320. Similarly, it cannot be unexpected that

Defendant must defend against an adverse claim to that property from a D.C. resident

who owns the remainder of the property. Moreover, the Trust's contact with this forum

through claimed ownership of a security interest in forum property also shows that it "has

purposefully availed itself of the benefits and protections of [District] law." *Hanson*, 357

U.S. at 253. As the Court in *Shaffer* explained, "the defendant's claim to property

located in the State would normally indicate that he expected to benefit from the State's

protection of his interest. The State's strong interests in assuring the marketability of

property within its borders . . . would also support jurisdiction." *Shaffer*, 433 U.S. at 207-

08 (internal citations omitted). The D.C. Court of Appeals endorsed a broad conception

of personal jurisdiction in a case of some relevance to this one. In *District of Columbia v.*

*Chase Manhattan Bank*, 689 A.2d 539, 543-45 (1997), the court found that taxing a trust

as a "resident trust" did not violate due process, even though the trustee, trust assets, and

trust beneficiaries were all located outside the District.

  For the above reasons, this Court concludes that the Trust's claim to ownership of

a security interest in Ms. Johnson's property is a contact with this forum sufficient to

subject the Trust to personal jurisdiction in this suit without offending the due process

standards articulated in *International Shoe* and subsequent cases.

     (c)  The Trust's Second Contact: Taking Assignment of Ms.
        Johnson's Mortgage Note

Second, taking assignment of a contract that forms the basis of the controversy *sub judice* is sufficient to satisfy both the D.C. long-arm statute and due process requirements, where such contract was made in the District, to be performed in the District, and governed by District law.[8] The Trust admits that it "holds mortgage notes, including Ms. Johnson's, secured by real property in D.C." and that "Long Beach Trust owns and receives income from mortgages on properties located in D.C." LB Reply at 2. Taking assignment of a mortgage note is neither an "irregular nor casual" act. *Int'l Shoe*, 326 U.S. at 320. It requires an affirmative, purposeful act on the part of a sophisticated corporation capable of assessing potential liability arising from the acquisition. Though Long Beach Mortgage Loan Trust 2001-4 has not physically entered this jurisdiction, "jurisdiction may sometimes exist even if a defendant 'did not *physically* enter the forum state.'" *Jung, M.D. v. Assoc. of Am. Medical Colleges*, 300 F. Supp. 2d 119, 129 (D.D.C. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis in original)).

It is also well established that an assignee of a contract created and to be performed in a particular forum may be subject to the jurisdiction of the forum's courts, even if the assignee has no other relevant contacts with the forum. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957). In *McGee*, "neither Empire Mutual [Insurance Company] nor respondent [International Life Insurance Company] has ever had any office or agent in California. And so far as the record before us shows, respondent has

---

[8] Because the D.C. long-arm statute "permits the exercise of personal jurisdiction to the fullest extent permissible under the due process clause," *Mouzavires v. Baxter*, 434 A.2d 988, 990-91 (D.C. 1981) (citations omitted), the Court omits here a separate analysis of relevant D.C. long-arm statute provisions.

never solicited or done any insurance business in California apart from the policy here."

*McGee*, 355 U.S. at 223. Yet the Court thought

> it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection[9] with that State . . . It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable.

*Id.* Taking assignment of a contract demonstrates, in the purest sense, that the assignee has purposefully availed himself of the benefits of the enforcing State's law, and accepted its burdens. *See, e.g.*, *Mouzavires*, 434 A.2d at 992 ("It is now well settled that the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here."). The assignee relies on the State's law to enforce the agreement, and concomitantly binds himself to discharge the liabilities the contract and law assign to him.

The U.S. Court of Appeals for the First Circuit in *Pritzker v. Yari*, 42 F.3d 53, 61-62 (1st Cir. 1994) followed these principles in rejecting a personal jurisdiction challenge by a defendant who had only one relevant contact to the forum – acquiring an interest in a lawsuit involving control over property. Observing that "in order to be subject to the jurisdiction of the forum state, a nonresident need have only one contact with the forum, so long as the contact is meaningful," the court concluded that "by knowingly acquiring an economically beneficial interest in the outcome of a Puerto-Rico based lawsuit that

---

[9] Subsequent cases have clarified that, in order for the contract to have a "substantial connection" with the forum, it is not sufficient merely that the contractees have a substantial connection to the forum. *See Burger King*, 471 U.S. at 476.

involved control over property located in Puerto Rico, [the defendant] necessarily exhibited sufficient minimum contacts to subject it to the district court's exercise of specific *in personam* jurisdiction." *Id.* (citing *McGee*, 355 U.S. at 223).

The First Circuit found this "path of inquiry [] neither long nor winding." *Id.* This Court agrees. In essence, it is only necessary to conclude (1) that by acquiring an interest in real property located in the District of Columbia and taking assignment of Ms. Johnson's mortgage, the Trust purposefully availed itself of the benefits and protections of D.C. law, and (2) that Ms. Johnson's cause of action arises out of or relates to these contacts. Thus, at the threshold of this case, before examining the merits of Plaintiff's derivative claims against the assignee, the Court concludes that its exercise of jurisdiction over the Trust does not violate due process.[10]

        (d)     Discussion of Relevant Cases from Other Jurisdictions

While, as noted, no cases from this jurisdiction directly address the issues presented here, several cases from other jurisdictions do so. These cases include recent decisions from the Ninth Circuit, the District of Kansas, the Western District of Tennessee, and the District of Rhode Island. *See Easter v. Am. West Financial*, 381 F.3d 948 (9th Cir. 2004); *Pilcher v. Direct Equity Lending*, 189 F. Supp. 2d 1198 (D. Kan. 2002); *Williams v. FirstPlus Home Loan Owner Trust*, 310 F. Supp. 2d 981 (W.D. Tenn. 2004); *Mull v. Alliance Mortgage Banking Corp.*, 219 F. Supp. 2d 895 (W.D. Tenn. 2002); *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65 (D.R.I. 1995). In each of these cases, the court addressed whether it could exercise personal jurisdiction

over a nonresident Trust who had purchased mortgage notes secured by real property in

the forum. In brief, this Court (1) agrees with the reasoning in *Easter*, (2) declines to

follow *Pilcher*, and (3) finds the remaining cases clearly distinguishable from the present

case.

Defendants cite *Pilcher v. Direct Equity Lending*, a 2002 case from the District of

Kansas, to support their argument that "mere holding of mortgages secured by property in

the forum state [is] not sufficient to confer jurisdiction over the defendant trusts." LB

Mem. to Dismiss at 12. The U.S. District Court for the District of Kansas held that it did

not have personal jurisdiction over nonresident trusts who were assignees of Kansas

mortgages. *See Pilcher*, 189 F. Supp. 2d at 1209-10. The court was persuaded by the

lack of contacts between the trusts and Kansas, and by availability to the trusts of a good

faith defense against claims of liability.[11] *See id.* The court also importantly noted that

"the essence of the plaintiffs' case is not the lien the Trusts hold on Kansas real property,

but the allegedly illegal interest and fees charged in connection with the challenged

loans." *Id.* at 1209. The cause of action in *Pilcher* might therefore not be said to arise

out of or relate to the trusts' interests in Kansas real property. In the instant case, in

---

[10] *See, e.g., Bancoult v. McNamara*, 445 F.3d 427, 432 (D.C. Cir. 2006) ("a court must 'address questions pertaining to its . . . jurisdiction before proceeding to the merits.'") (quoting *Tenet v. Doe*, 125 S.Ct. 1230, 1235 n.4 (2005)).

[11] In this Court's view, the availability of a state law defense should not affect the permissibility of exercising personal jurisdiction under the Constitution. Moreover, a non-jurisdictional defense goes to the merits of a plaintiff's claim, not to the power of the court to render a judgment. *See Fernandez v. Centerplate/NBSE*, 441 F.3d 1006, 1009 (D.C. Cir. 2006) ("it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for want of jurisdiction. . . . If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal would be on the merits, not for want of jurisdiction.") (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

contrast, the essence of Plaintiff's case is both the allegedly void security interest and allegedly illegal fees charged in connection with the loans.

Regardless, this Court must respectfully disagree with the *Pilcher* court's conclusion that because "the Trusts have not attempted to foreclose any liens on Kansas property . . . [t]here is no evidence that the Trusts ever intended to purposefully avail themselves of the privilege of transacting business in Kansas, such that they might reasonably anticipate being haled into court here." *Id.* at 1209. As the Supreme Court has made clear, a "defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest." *Shaffer*, 433 U.S. at 207-08. Indeed, to be subject to the jurisdiction of the courts, a defendant need only purposefully avail himself of "the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights." *Int'l Shoe*, 326 U.S. at 320. In this case, as in *Pilcher*, the trusts have purposefully availed themselves of the benefits and protections of state law by relying on the right to resort to the courts for the enforcement of their security interests and revenue streams under the mortgages. This simple conclusion was, in fact, all the Ninth Circuit found necessary to validate the exercise of personal jurisdiction over nonresident trusts in a case similar to this one. *See Easter*, 381 F.3d at 960-61. The court reasoned that:

> the Trust Defendants have availed themselves of the protections of Washington law because they are beneficiaries of deeds of trust, which hypothecate Washington realty to secure payments on notes owned by the Trust Defendants. The deeds of trust convey a property interest in Washington realty, which interest the Trust Defendants expect Washington law to protect . . . The Trust Defendants also receive money from Washington residents, albeit routed through the loan servicing companies who actually bill the payors.

*Id.* This Court finds the analysis in *Easter* more persuasive.

The other cases Defendant cites to support its position are clearly distinguishable

from the present case. In *Williams v. FirstPlus Home Loan Owner Trust*, 310 F. Supp. 2d

981 (W.D. Tenn. 2004), *Mull v. Alliance Mortgage Banking Corp.*, 219 F. Supp. 2d 895

(W.D. Tenn. 2002), and *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65

(D.R.I. 1995), the courts declined to exercise personal jurisdiction because the

hypothecated property was unrelated to the cause of action. Quite simply, plaintiffs

attempted to count mortgages held on forum property other than their own as

constitutionally sufficient contacts. Thus, the courts lacked a fundamental requirement

for valid exercise of specific personal jurisdiction – that the cause of action "arise out of

or relate to" the defendant's contacts with the forum. In fact, Defendant cites *Mull* for the

proposition that "when a defendant's forum activities consist solely of holding mortgages

secured by property in the forum state, the contacts cannot be characterized as continuous

or systematic such that an exercise of *general personal jurisdiction* would be

permissible." LB Reply at 2 (quoting *Mull*, 219 F. Supp. 2d at 905-907) (emphasis

added). The Court agrees with that proposition, and consequently does not find the

exercise of *general* personal jurisdiction over the Trust permissible. Rather, as already

shown, the cause of action arises out of and relates to the Trust's claimed ownership of

the security interest in Ms. Johnson's property, and the Trust's taking assignment of Ms.

Johnson's mortgage, so that the exercise of specific personal jurisdiction is permissible.

>    B.    *Plaintiff's Fraud and Negligent Supervision Claims Against Long Beach*
>          *Mortgage Company*

Defendant Long Beach Mortgage Company argues that "Plaintiff[] failed to state

a claim for fraud [or negligent supervision] against LB Mortgage" because Long Beach

Mortgage cannot "be held vicariously liable for the acts of another company's employee." *See* LB Mem. to Dismiss at 20.  To support its position, Defendant cites *Computer Data Systems, Inc. v. Kleinberg*, 759 F. Supp. 10, 18 (D.D.C. 1990), parenthetically noting that the court "dismiss[ed] plaintiff's fraud claim for failing to plead the elements with sufficient particularity." *Id.*  Plaintiff responds that "a party need not be employed by another to be its agent and [] agency need not be pled with particularity. . . ." Pl.'s Opp'n at 37.

Rule 9(b) states that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  By its terms, Rule 9(b) does not require that a claim of agency be stated with particularity.  The purpose of Rule 9(b) "is to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (finding Rule 9(b) will apply to the issue of agency where plaintiff depends on substantive allegations of fraud to establish agency relationship).

Here, the parties do not dispute that Plaintiff has described the time, place, and content of the alleged fraudulent statements with sufficient particularity to satisfy Rule 9(b).  *See* Compl. ¶¶ 20-29.  The Court finds that Defendant Long Beach has "adequate notice . . . so that [it] may file an effective responsive pleading." *Lachmund*, 191 F3d at 783.  Indeed, Long Beach Mortgage is keenly aware that Plaintiff's fraud claim against it depends on its alleged role as principal to Mortgage USA.  Long Beach can prepare an adequate answer either denying the existence of this relationship or contesting Plaintiff's

specific claims of fraud to meet Plaintiff's allegations. The Court agrees that, when read in a light favorable to Plaintiff, Plaintiff's "allegations and inference provide [Long Beach Mortgage] adequate notice that the agency relationship turns on general roles played by Mortgage USA and Mr. Thompson in loan making." Pl.'s Opp'n at 38. Accordingly, Defendant's Motion to Dismiss Plaintiff's fraud and negligent supervision claims against Long Beach Mortgage for failure to adequately plead agency is denied.[12]

C.      *Plaintiff's Unconscionability Claims*

Plaintiff asserts claims of unconscionability in Counts I and III of her Complaint, under (1) the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904(r), (2) U.C.C. Article 2, D.C. Code § 28:2-302, and (3) the common law. The Court now addresses the adequacy of Plaintiff's pleading and availability of relief for these claims, addressing the latter two claims first.

1.      Plaintiff's Claim of Unconscionability Under D.C. Code § 28:2-302

Plaintiff asserts a claim of unconscionability in Count III, which is captioned "Unconscionability [new line] D.C. Code Section 28:2-302." *See* Compl. ¶¶ 46-52. D.C. Code § 28:2-302 codifies U.C.C. Article 2. U.C.C. Article 2 applies only to sale of goods, not loans. *See* D.C. Code §§ 28:2-102, 28:2-105(1) (2001) ("this article applies to transactions in goods; it does not apply to any transaction which . . . is intended to operate only as a security transaction"); *see also Williams v. Central Money Co.*, 974 F. Supp. 22,

---

[12] Of course, Plaintiff retains the ultimate burden of proving her claims of agency. *See Young v. 1st Am. Financial Servs.*, 992 F. Supp. 440, 444-45 (D.D.C. 1998) (granting summary judgment to lender on issue of fraud where plaintiff failed to provide evidence of lender's control over mortgage broker who allegedly made fraudulent statements).

28 (D.D.C. 1997).[13]  Thus, Plaintiff cannot base her unconscionability claim on D.C.

Code § 28:2-302.

>   2.   Plaintiff's Claim of Unconscionability Under the Common Law

Reading the Complaint in a light favorable to Plaintiff, however, Count III can be

construed to encompasses a claim for common law unconscionability, as well as statutory

unconscionability under the DCCPPA.  It states, for instance, that "[i]n the District of

Columbia, a contract is unconscionable if there is an absence of meaningful choice on the

part of one of the parties together with contract terms which are unreasonably favorable

to another party" without referencing the U.C.C. provision.  Compl. ¶ 47.  This statement

of unconscionability mirrors that given in *Williams v. Walker-Thomas Furniture Co.*, 350

F.2d 445, 449 (D.C. Cir. 1965), an influential pre-U.C.C. case formulating the common

law doctrine of unconscionability.  As such, the Court will treat Count III of Plaintiff's

Complaint as asserting claims for unconscionability under both D.C. Code § 28:2-302

and the common law.

Defendants contend that Plaintiff's unconscionability claim should be dismissed

for two reasons: (1) because "a claim for unconscionability is a defense and cannot be

used as an affirmative cause of action," and (2) because "Plaintiffs . . . fail to allege an

[essential] element of the claim: the absence of a meaningful choice."  LB Mem. to

Dismiss at 21.

---

[13] In addition, § 28:2-302 only empowers this Court to "refuse to enforce the contract, or
it may enforce the remainder of the contract without the unconscionable clause, or it may
so limit the application of any unconscionable clause as to avoid any unconscionable
result."  § 28:2-302(1).  This provision does not authorize the Court to award damages.
*See Cowin Equip. Co., Inc. v. General Motors Corp.*, 734 F.2d 1581 (11th Cir. 1984).

First, citing for support a number of cases from around the country, Defendants argue that under the common law a court can do no "more than refuse enforcement of the unconscionable section or sections of the contract" but cannot award either restitution or money damages. *Id.* at 21 (citing *Bennett v. Behring Corp.*, 466 F. Supp. 689, 700 (S.D. Fla. 1979) ("the equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages"; "neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse enforcement of the unconscionable section or sections of the contract"); *Von Lehn v. Astor Art Galleries, Ltd.*, 380 N.Y.S.2d 532, 541 (N.Y. Sup. Ct. 1974); *Cowin Equip. Co. v. General Motors Corp.*, 734 F.2d 1581, 1583 (11th Cir. 1984); *Galvin v. First Nat'l Monetary Corp.*, 624 F. Supp. 154, 158 (E.D.N.Y. 1985)).

Defendants' proposition is accurate. *Williams v. Walker-Thomas Furniture Co.* itself involved a defense of unconscionability in a suit to replevy items purchased by Mrs. Williams. *See also* Restatement (Second) of Contracts § 208 ("If a contract or term thereof is unconscionable . . . a court may refuse to enforce the contract . . . ."). Likewise, in *Williams v. Central Money*, the court agreed that "the claim of common law unconscionability appears to apply only defensively, for example, as a response to an attempt to enforce a contract." 974 F. Supp. at 28 (citing Restatement (Second) of Contracts § 208 comment g). Accordingly, that court dismissed unconscionability claims against loans that "were paid off and no enforcement of those loans was involved." *Id.* at 28. On the other hand, that court did not dismiss an unconscionability claim against a mortgage loan with an outstanding balance. *See id.* The court found a sufficiently

definite controversy to merit a judgment on the enforceability of the loan agreement. *See id.*

In this case, Plaintiff seeks "compensatory damages" under Count III. Compl. ¶ 52. As the foregoing exposition shows, Plaintiff cannot recover compensatory damages under the common law doctrine of unconscionability. Plaintiff counters that her "unconscionability claims are actionable for declaratory relief" because "Ms. Johnson is in default on her loan and, with her home at stake, the amounts owed or not owed affect every financial decision she might make. . . ." Pl.'s Opp'n at 36. This controversy may be "definite and concrete" and "admitting of specific relief through a decree of a conclusive character," warranting declaratory relief. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240-41 (1937); *see also* Fed. R. Civ. P. 57; 28 U.S.C. § 2201. The Court finds it imprudent at this stage to so rule, however, based only on Plaintiff's assertion that "the amounts owed or not owed affect every financial decision [Ms. Johnson] might make. . . ." Pl.'s Opp'n at 36. Importantly, Plaintiff has not described Ms. Johnson's options to avoid foreclosure, or any advantages litigation before this Court seeking declaratory relief would have over an assertion of unconscionability in a presumably impending foreclosure proceeding. The Court will therefore defer ruling on the availability of declaratory relief for Ms. Johnson under the common law doctrine of unconscionability, pending (1) resolution of dismissal of this claim on statute of limitations grounds, and (2) further development of facts describing Ms. Johnson's legal options to avoid foreclosure.

Second, Defendants argue that "Nowhere in the complaint do Plaintiffs allege – nor can they – that Ms. Johnson did not have a meaningful choice to obtain her loan from

someone other than Mortgage USA or LB Mortgage." LB Mem. to Dismiss at 22. The

Court disagrees. Lack of meaningful choice encompasses not only choice of mortgage

broker and lender, but also choice about the terms of the contract. *See, e.g., Williams v.*

*First Gov't Mortg. and Investors Corp.*, 225 F.3d 738, 748 (D.C. Cir. 2000) ("Whether a

meaningful choice is present in a particular case can only be determined by consideration

of all the circumstances surrounding the transaction. In many cases the meaningfulness

of the choice is negated by a gross inequality of bargaining power. The manner in which

the contract was entered is also relevant to this consideration"). Here Plaintiff alleges

Ms. Johnson had "no bargaining power in her discussions with Mr. Thompson" and that

"Defendants took unfair advantage of Ms. Johnson's age, limited education, limited

ability to comprehend the nature of the loans, limited economic resources and lack of

business sophistication . . . ." Compl. ¶¶ 49, 51. Plaintiff has therefore adequately alleged

lack of meaningful choice.

    Count III of Plaintiff's Complaint accordingly asserts a valid claim of common

law unconscionability, possibly admitting of a declaration of the enforceability of the

Loan II agreement as a remedy.

> ### 3.    Plaintiff's Claim of Unconscionability Under D.C. Code § 28-3904(r)

Plaintiff brings a claim of unconscionability under D.C. Code § 28-3904(r) in

Count I of her Complaint. *See* Compl. ¶¶ 35, 37. Section 28-3904(r) declares it "a

violation of this chapter . . . for any person to . . . (r) make or enforce unconscionable

terms or provision of sales or leases . . . ." D.C. Code § 28-3904(r) (2001). The Court

first determines whether this provision applies to the transaction at issue in this case, and

then determines whether an action for damages can be brought for its violation. Finally, the Court determines if Plaintiff has adequately alleged the elements of unconscionability under § 28-3904(r).

First, in *DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699, 703 (D.C. 1999), the District of Columbia Court of Appeals expressly held that D.C. Code § 28-3904(r) applies to real estate mortgage finance transactions. Though mortgage finance transactions are not obviously "sales or leases," the court found them "sales" of mortgage financing services for purposes of the D.C. Consumer Protection Procedures Act. Thus, D.C. Code § 28-3904(r) applies to the transaction at issue in this case.

Second, D.C. Code § 28-3904(k)(1) authorizes "a person" to "bring an action under this chapter in the Superior Court of the District of Columbia, seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies. . ." D.C. Code § 28-3904(k)(1) (2001). Remedies include treble damages, reasonable attorney's fees, punitive damages, an injunction, and "any other relief which the court deems proper." *Id.* The express terms of 28-3904(k)(1) therefore authorize Plaintiff to bring an action for a violation of § 28-3904(r), and to seek money damages and other relief as remedies. *Id.*; *see also Cooper v. First Gov't Mortg. and Investors Corp.*, 206 F. Supp. 2d 33, 35 (D.D.C. 2002) ("The CPPA provides consumers with a private cause of action against merchants who make or enforce unconscionable leases or sales provisions") (citing *Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998)). While this Court is not "the Superior Court of the District of Columbia," this Court has jurisdiction to hear the claim because states cannot prevent resort to federal courts with proper jurisdiction for enforcement of a right created

by the state. *See Indep. Commc'ns Network v. MCI Telecomms. Corp., Inc.*, 657 F. Supp. 785, 786 (D.D.C. 1987); *Markham v. City of Newport News*, 292 F.2d 711, 712 (4th Cir. 1961).[14] Thus, Plaintiff can bring an affirmative action in this Court asserting unconscionability under D.C. Code § 28-3904(r) and § 28-3905(k).

Third, § 28-3904(r) states "in applying this subsection, consideration shall be given to . . . (1) knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer; . . . (5) that the person has knowingly taken advantage of the inability of the consumer to reasonably protect his interests by reasons of age . . . ." D.C. Code § 28-3904(r) (2001). Plaintiff alleges, among other things, that "[a]fter closing on Loan II, Ms. Johnson had to pay over half of her monthly income to mortgage costs" and that in making the loans "Defendants took unfair advantage of Ms. Johnson's age, limited education, limited ability to comprehend the nature of the loans, limited economic resources and lack of business sophistication. . . ." Compl. ¶¶ 30, 51. Plaintiff has therefore adequately alleged a claim under § 28-3904(r).

Plaintiff's unconscionability claim under § 28-3904(r) shall not be dismissed on the above grounds.

### D.    Statutes of Limitations

---

[14] While the decision in *Markham* applies strictly only to diversity jurisdiction, the conclusion holds for supplemental jurisdiction (the basis for the Court's jurisdiction here) as well. *See Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 533 (S.D.N.Y. 2005) ("Nothing . . . suggests that the TCPA precludes district courts from hearing private TCPA claims where some other independent basis for federal jurisdiction exists, such as diversity of citizenship or supplemental jurisdiction") (citations omitted).

Defendants argue in their motions to dismiss that statutes of limitations bar all of the claims asserted in Plaintiff's Complaint. EC Mem. to Dismiss at 4-13; LB Mem. to Dismiss at 12-19. This argument is properly considered via a Rule 12(b)(6) motion. *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint"); *see also Gordon v. Nat'l Youth Work Alliance*, 675 F. 2d 356, 360 (D.C. Cir. 1982) ("the proper method for raising a defense of limitation is a motion under Rule 12(b)(6)"). A motion to dismiss may be granted on statute of limitations grounds only if apparent from the face of the complaint. *See Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985); *see also Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. [B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred") (citations omitted).

For the reasons set forth below, the Court finds that: (1) Plaintiff's TILA rescission claim in Count XII is not barred by the applicable statute of limitations as against EquiCredit Corp.; (2) Plaintiff's TILA rescission claim in Count XII is barred by the applicable statute of limitations as against all other Defendants; (3) Plaintiff's claims of civil liability under TILA are barred by the applicable statute of limitations as to all Defendants; (4) Plaintiff's Usury Statute claim in Count IV is barred by the applicable statute of limitations as to all Defendants; (5) the discovery rule applies to Plaintiff's D.C. common law and statutory claims; (6) under the discovery rule, the date of accrual of

Plaintiff's non-Usury Statute D.C. claims depends on the existence of the alleged fiduciary relationship between Ms. Johnson and Mortgage USA, and cannot be determined as a matter of law on this motion to dismiss.

      1.    <u>TILA Claims</u>

The statute of limitations on TILA claims begins to run "from the date of the occurrence of the violation." 15 U.S.C. 1640(e)  For claims of civil liability under TILA, the date of occurrence of the violation is no later than the date of loan settlement. *See Lawson v. Nationwide Mortg. Corp.*, 628 F. Supp. 804, 807 (D.D.C. 1986).  For claims of failure to effectuate rescission, the date of occurrence of the violation is the earlier of when the creditor refuses to effectuate rescission, or 20 days after it receives the notice of rescission. *See McNinch v. Mortgage America, Inc.* (*In re McNinch*), 250 B.R. 848, 852 (W.D. Pa. 2000).  For the reasons set forth below, (1) Plaintiff's claims of civil liability under TILA are barred by the applicable statute of limitations as to all Defendants; (2) Plaintiff's TILA claim in Count XII seeking rescission of Loan I as against EquiCredit Corp. was timely brought within one year and twenty days after she sent her Notice of Rescission to EquiCredit; (3) Plaintiff's equivalent claim in Count XII against Washington Mutual is barred, as it was not brought within one year and twenty days after Ms. Johnson sent her Notice of Rescission to Long Beach or Washington Mutual.

      (a)    Civil liability under TILA

Count XI of Plaintiff's Complaint asserts claims of civil liability under TILA against Mortgage USA, EquiCredit Corp., and Long Beach. *See* Compl. ¶¶ 104-107.  An action for civil liability under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  In closed-end consumer credit

transactions, such as the one in this case, the limitations period begins to run on the date

of settlement. *See Postow v. OBA Fed. Savings & Loan Assoc.*, 627 F.2d 1370, 1380

(D.C. Cir. 1980); *Lawson v. Nationwide Mortg. Corp.*, 628 F. Supp. 804, 807 (D.D.C.

1986) ("In this circuit, violation of TILA occurs no later than the date of settlement of

any loan for which required disclosures have not been made").

Here, Plaintiff alleges that "[w]ith respect to Loan I, EquiCredit . . . failed to make

any TILA disclosures whatsoever." *See* Compl. ¶¶ 17, 106. Because Loan I closed on

April 2, 2001, Plaintiff's TILA claim for this alleged violation expired one year later on

April 2, 2002. As Plaintiff did not file this lawsuit until March 30, 2005, Count XI of the

Complaint against EquiCredit is barred by TILA's one-year statute of limitations and

shall be dismissed.

Similarly, Plaintiff alleges in Count XI that "[w]ith respect to Loan II, Long

Beach . . . failed to disclose to Ms. Johnson, *inter alia*, the proper amount financed" as

required by TILA. *See* Compl. ¶¶ 20-27, 106. Because Loan II closed on August 17,

2001, Plaintiff's TILA claim for this alleged violation expired one year later on August

17, 2002. As Plaintiff did not file this action until March 30, 2005, Count XI of the

Complaint against Long Beach is barred by TILA's one-year statute of limitations and

shall be dismissed.

(b)     Declaration of a Valid Rescission

Count XII requests "Declaratory Relief of a Valid Rescission Under TILA"

against EquiCredit and Washington Mutual, the lenders. *See* Compl. ¶¶ 108-115. Under

TILA, borrowers have three business days after the loan is consummated to exercise their

right of rescission and cancel the transaction. *See* 15 U.S.C. § 1635(a). If the creditor

fails to provide all material disclosures and/or proper notice of the right to rescind, however, a borrower's right of rescission is extended to three years from the date of settlement. *See* 15 U.S.C. § 1635(f). If the borrower exercises her right of rescission during this extended period, the creditor's denial of rescission or its failure to properly respond to the rescission within 20 days after receipt of notice gives rise to a potential violation under TILA and commences the running of TILA's one year statute of limitations. *See* 15 U.S.C. § 1635(b) (requiring creditor "[w]ithin 20 days after receipt of a notice of rescission to return [to] the obligor any money or property given as earnest money, downpayment or otherwise, and [to] take any action necessary or appropriate to reflect the termination of any security interest created under the transaction); *McNinch v. Mortgage America, Inc.* (*In re McNinch*), 250 B.R. 848, 852 (W.D. Pa. 2000) (statute of limitations for rescission violation runs from date of violation, which is the failure to act, which becomes a violation 20 days after creditor receives notice); *Velazquez v. HomeAmerican Credit, Inc.*, 254 F. Supp. 2d 1043, 1048 (N.D. Ill. 2003) (statute begins to run from the date creditor refuses to rescind).

In this case, Plaintiff alleges that "Ms. Johnson, through counsel. . .sent a notice of rescission pursuant to Section 125 of TILA, U.S.C. Sec. 1635, Regulation Z, Sections 226.23" to Washington Mutual on February 26, 2003, and that Washington Mutual did not acknowledge her rescission. *See* Compl. ¶¶ 31; Pl.'s Opp'n at 14. The alleged TILA violation occurred 20 days later, on March 18, 2003, and commenced the running of TILA's one year statute of limitations. *See* 12 C.F.R. § 226.23(a)(2) ("Notice is considered given when mailed"). The limitations period ended one year later, on March 18, 2004. Because Plaintiff did not file this lawsuit until March 30, 2005, Plaintiff's

rescission claim against Washington Mutual in Count XII is time-barred as a matter of law.[15]

Similarly, Plaintiff alleges that "Ms. Johnson, through counsel . . . sent a notice of rescission pursuant to Section 125 of TILA, U.S.C. Sec. 1635, Regulation Z, Sections 226.23" to EquiCredit Corp. on March 26, 2004, and that EquiCredit did not acknowledge her rescission. *See* Compl. ¶¶ 31; Pl.'s Opp'n at 10. Under these facts, the limitations period on Plaintiff's rescission claim began to run on April 15, 2004, and ended on April 15, 2005. Because Plaintiff filed this lawsuit on March 30, 2005, Plaintiff's rescission claim against EquiCredit in Count XII is not time-barred.

2.     Dates of Accrual of Plaintiff's D.C. Claims

In this section and the next section, the Court (i) examines the dates of accrual of Plaintiff's claims of violations of the D.C. Consumer Protection Act, D.C. Consumer Protection Procedures Act, and Usury Statute, common law fraud, unconscionability, conspiracy, aiding and abetting the deception of Ms. Johnson, negligence, and negligent supervision ("D.C. claims"), then (ii) determines how long Plaintiff had from the dates of accrual to sue without violating applicable statutes of limitations. The Court finds that: (i) under the discovery rule, the dates of accrual of Plaintiff's D.C. claims depends on the existence of the alleged fiduciary relationship between Ms. Johnson and Mortgage USA, which cannot be determined as a matter of law on this motion to dismiss, and (ii) all of Plaintiff's D.C. claims apart from her claim under the Usury Statute are governed by the

---

[15] Plaintiff concedes that "Plaintiffs cannot bring TILA claims affirmatively against the LB Defendants, because Ms. Johnson did not commence a lawsuit within 120 days after she gave notice of rescission . . . ." *See* Pl.'s Opp'n at 14.

District's residual three-year statute of limitations; Plaintiff's Usury Statute claim is governed by its own statute of limitations and shall be dismissed.

(a)     Accrual of a Cause of Action Under the Discovery Rule

Under the D.C. statute of limitations, D.C. Code § 12-301, the limitations period begins to run "from the time the right to maintain the action accrues." D.C. Code § 12-301 (2001). As a general rule under D.C. law, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001) (citing *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994)). In a restricted class of cases, however, where "the relationship between the fact of injury and the alleged tortuous conduct [is] obscure," the discovery rule applies. *Colbert*, 641 A.2d at 472-73. Under the discovery rule, "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Id.* at 473. D.C. courts have applied this rule in cases of medical malpractice, *see Burns v. Bell*, 409 A.2d 614 (D.C. 1979) (adopting the discovery rule); legal malpractice, *Ray v. Queen*, 747 A.2d 1137, 1141 (D.C. 2000); defective house design and construction, *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202 (D.C. 1984); repressed memories of sexual abuse, *Farris v. Compton*, 652 A.2d 49, 54-55 (D.C. 1994); products liability where the injury is a latent disease, *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 116-17 (D.C. 1982); and fraud, *Diamond v. Davis*, 680 A.2d 364 (D.C. 1996). The D.C. Court of Appeals deemed the discovery rule appropriate in these cases because "the *fact* of an injury [was] not readily apparent." *Mullin*, 785 A.2d

at 299 (citing *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998) (emphasis in original)).

"[F]or a cause of action to accrue where the discovery rule is applicable, one must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing." *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 435 (D.C. 1986). Consistent with this standard, a claim may accrue before the plaintiff knows all relevant facts. *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 661 (D.C. 1997). Any "appreciable and actual harm flowing from the [defendant's] conduct" is sufficient. *Id.* (citing *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989)); *see also Bergen v. Rothschild*, 648 F. Supp. 582, 585 (D.D.C. 1986) (noting that knowledge of any fact that should cause suspicion is equivalent to actual knowledge of a claim). Knowledge of facts, and not knowledge of the legal significance of those facts, controls the time of accrual. *See Fleck v. Cablevision VII, Inc.*, 799 F. Supp. 187, 190 (D.D.C. 1992); *Bergen v. Rothschild*, 648 F. Supp. 582, 585 (D.D.C. 1986). Where the discovery rule applies, "the inquiry is highly fact bound and requires an evaluation of all of the plaintiff's circumstances." *Diamond*, 680 A.2d at 372.

The Court now applies a two-step analysis appropriate in cases where the discovery rule may apply. First, the Court makes a preliminary determination about whether the discovery rule applies to the claims at issue, based on if "the fact of injury was [] readily apparent." *Mullin*, 785 A.2d at 299. Second, for those claims to which the discovery rule arguably applies, the Court evaluates when those claims accrued under the discovery rule. *Bussineau*, 518 A.2d 423, 435 (D.C. 1986). Because the second step

requires evaluating if and when the fact of injury was readily apparent, the two steps overlap to a large degree and courts often apply them together. *See, e.g., Hendel*, 705 A.2d at 661.

In this case, Plaintiff contends that her claims of fraud, violations of the DCCPA, DCCPPA, and Usury statute, conspiracy to defraud, and aiding and abetting the deception of Ms. Johnson, negligence, and negligent supervision are all subject to the discovery rule. *See* Compl. ¶¶ 33-38, 39-45, 46-52, 53-61, 77-82, 83-87, 88-93, 94-103; Pl.'s Opp'n at 19. At this juncture, the Court cannot disagree. Plaintiff's fraud claims are strictly subject to the discovery rule. *See Diamond*, 680 A.2d at 372. Plaintiff's related claims in Counts I, II, III, IV, VII, VIII, IX, and X of her complaint, alleging violations of the DCCPA and DCCPPA, fraud, violations of the Usury Statute, conspiracy to defraud, and aiding and abetting the deception of Ms. Johnson, negligence, and negligent supervision, respectively, all stem from either direct participation in or failure to properly prevent Mortgage USA from allegedly defrauding Ms. Johnson and charging excessive fees. *See* Compl. ¶¶ 33-38, 39-45, 46-52, 53-61, 77-82, 83-87, 88-93, 94-103. For instance, Plaintiff alleges that "[t]he Defendants caused Ms. Johnson to pay for services she did not need by falsely representing that these services were necessary . . . including, but not limited to, those purportedly provided in consideration for the Loan Origination Fees and other settlement charges for Loan II" in violation of the DCCPPA. Compl. ¶ 37. Ms. Johnson had no more duty to make a reasonable inquiry into these alleged wrongs, than she had to inquire into the allegedly excessive charges themselves. Plaintiff contends, essentially, that she knew of the charges, but, relying on her broker's representations, believed the charges were bona fide and did not realize she had been

wronged. *See* Compl. ¶¶ 25-29. In other words, "the *fact* of an injury [was] not readily apparent" to Ms. Johnson. *Mullin*, 785 A.2d at 299. As such, the Court finds appropriate an analysis of the date of accrual of Plaintiff's District of Columbia claims under the discovery rule.

The Court begins its analysis by examining *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977 (D. Md. 2002), a case that factually closely resembles the instant case. Legally, *Miller* may lead to dismissal of Plaintiff's D.C. claims on statute of limitations grounds, but not at the motion to dismiss stage, due to one distinction between that case and this one important under D.C. law. Ms. Johnson namely alleges that Mortgage USA owed her a fiduciary duty. Under District of Columbia law, a court must take into account the existence of a fiduciary duty when evaluating the reasonableness of a plaintiff's diligence in investigating wrongdoing. *Diamond*, 680 A.2d at 376. Plaintiff's D.C. claims, apart from her Usury Statute claim, will consequently survive Defendants' Motions to Dismiss.

In *Miller*, the Maryland District Court applied the discovery rule to determine the date of accrual of plaintiff's cause of action arising out of a mortgage transaction.[16] The plaintiff alleged that Pacific Shore Funding charged excessive or unauthorized fees in conjunction with loans that were secured by a mortgage on his residence. *Id.* at 983. The plaintiff "was charged all of the fees and expenses of which he complains" at the loan's closing, according to his complaint. *Id.* at 986. Furthermore, "the charges were all expressly identified in the closing documents." *Id.* Based on these allegations, the court

---

[16] It should be noted that Maryland follows the discovery rule for all cases. *See Poffenberger v. Risser*, 431 A.2d 677 (Md. 1981).

concluded as a matter of law that plaintiff's claims accrued on the date of loan closing,

and granted defendant's 12(b)(6) motion on statute of limitations grounds. *See id.* at 990.

The court reasoned that "the legally operative facts permitting the filing of [his] claims

came into existence" at closing, and that plaintiff "had sufficient knowledge of

circumstances indicating he might have been harmed." *Id.* at 986, 990.

As in *Miller*, Plaintiff here alleges that many of fees charged at Loan II's closing

"were neither *bona fide* nor reasonable." Compl. ¶ 26. For instance, "while the

Defendants claimed to pay $140 in government recording charges in the form of the

Recording Fee . . . the Recorder of Deeds in the District of Columbia typically charges

. . . not more than $40." *Id.* ¶ 27. As in *Miller*, Plaintiff "was charged all of the fees and

expenses of which [s]he complains" at the loan's closing -- and all fees and charges were

itemized on her closing documents. *See* Compl. ¶¶ 23-25 & Ex. A (Loan II HUD-1

Form); 224 F. Supp. 2d at 986. As in *Miller*, Plaintiff contends that "the statute of

limitations did not begin to run on plaintiffs' claims until Ms. Johnson knew or should

have known she had a legal claim." Pl.'s Opp'n at 19; *see Miller*, 224 F. Supp. 2d at 986.

But for Plaintiff's allegation that Mortgage USA owed her a fiduciary duty, *see infra*

Section III(B)(2)(b), this Court might conclude, as the *Miller* court did, that Plaintiff's

claims accrued on the date of loan closing because at that time Ms. Johnson "had

sufficient knowledge of circumstances indicating [s]he might have been harmed." *Miller*,

224 F. Supp. 2d at 990; *accord Lynch v. Dial Finance Co. of Ohio No. 1, Inc.*, 101 Ohio

App.3d 742, 748 (Ohio 1995) ("plaintiffs knew or should have known about the charges

for accident and health insurance because they were itemized on the face of the loan

documents which they signed in the latter 1970s. What plaintiffs 'discovered' seventeen

years later is that their lawyer told them that these charges allegedly violated [an Ohio

statute]. That 'discovery' cannot be used to circumvent the statute of limitations or

limitations would become meaningless.").

Cases from this District would support this conclusion. In *Perkins v. Nash,* 697 F.

Supp. 527, 528 (D.D.C. 1988), for instance, plaintiff alleged fraud, breach of fiduciary

duty, unjust enrichment, and violations of TILA, the DCCPA, and the Racketeer

Influenced and Corrupt Organizations Act (RICO) after obtaining a loan with

unfavorable terms. The court dismissed the case on statute of limitations grounds,

holding that "[w]here Perkins pleads facts showing he was aware of such conduct . . . and

was clearly injured at least three years before filing [suit], the only result can be that he

was not diligent in filing any claims . . . To hold otherwise would be to unfairly disturb

the repose to which a prospective defendant is entitled . . . ." *Id.* at 535; *see also*

*Fitzgerald v. Seamans,* 553 F.2d 220, 227 (D.C. Cir. 1977) ("the fact of injury was

sufficiently plain for [plaintiff's] cause of action to accrue even though the extent and

precise nature of the injury had not yet developed"); *Bergen v. Rothschild,* 648 F. Supp.

582, 585 (D.D.C. 1986) (noting that knowledge of any fact that should cause suspicion is

equivalent to actual knowledge of a claim, and that "[i]t is also well-established that an

injured party has a positive duty to use diligence in discovering his cause of action within

the limitations period.").

    (b)  The Importance of Mortgage USA's Alleged Fiduciary
        Duty to Ms. Johnson

One important distinction between this case and *Miller,* however, compels this

Court to reach an opposite result from that court and deny Defendants' Motion to Dismiss

on statute of limitations grounds with respect to Plaintiff's D.C. Claims other than her

Usury Statute claim. Unlike in *Miller*, Plaintiff here alleges that her mortgage broker

"had a fiduciary duty to Ms. Johnson." Compl. at 15. This Court is bound by District of

Columbia precedent to consider the existence of a fiduciary duty when determining,

under the discovery rule, when Plaintiff's claims accrued. District of Columbia courts

"have long taken into account the confidential or fiduciary relationship between the

plaintiff and defendant . . . [i]n evaluating the reasonableness of plaintiff's diligence."

*Diamond*, 680 A.2d at 376 (citing *Kilbourn v. Sunderland*, 130 U.S. U.S. 505, 519

(1889));[17] *see also Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) ("Facts which

might ordinarily require investigation likely may not excite suspicion where a fiduciary

relationship is involved"). As summarized in *Ray v. Queen*,

> The rule that, in cases of fraud, the statute of limitations begins to run only from
> the time of the discovery of the fraud, will not apply where the party affected by
> the fraud might, with ordinary diligence, have discovered it. But the failure to use
> such diligence may be excused where there exists some relation of trust and
> confidence . . . between the party committing the fraud and the party who is
> affected by it.

*Ray*, 747 A.2d 1137, 1142 (D.C. 2000) (citing *Merchants Mortgage Co. v. Lubow*, 339

A.2d 664 (Md. 1975)).

It would be less reasonable to hold Ms. Johnson to have inquired into the fees, if

by law her broker had a duty to inquire for her. This conclusion is tempered by Ms.

---

[17] In this case, no fiduciary relationship is alleged "between the plaintiff and defendant,"
but rather between Plaintiff and Defendant's alleged agent or co-conspirator. The logic
of the above-cited cases holds equally well if an agent or co-conspirator defrauds
someone to whom it has a fiduciary duty on behalf of, or in concert with, the principal or
co-conspirator. But the Court need not address now what difference might result if
Mortgage USA is found to be a fiduciary of Ms. Johnson but not an agent or co-
conspirator of the lenders.

Johnson's undisputed knowledge that *something* was amiss when she failed to receive the $15,000 her broker allegedly promised. *See* Compl. ¶ 22; *see also Bergen* 648 F. Supp. at 585 (D.D.C. 1986) (noting that knowledge of any fact that should cause suspicion is equivalent to actual knowledge of a claim). Nonetheless, although Ms. Johnson's suspicions may have been excited when she did not receive the promised disbursement, those suspicions may have been allayed by Mortgage USA's alleged fraudulent representations that the fees causing the shortfall were bona fide, necessary, and "simply passed on to government entities." Compl. ¶ 25. Reading Plaintiff's complaint in the light most favorable to her, Ms. Johnson may have reasonably believed that her broker undertook a thorough investigation of the fees, certified them as legitimate, and had obtained a loan for her on favorable terms. Thus, a reasonable fact-finder could conclude, if Mortgage USA had a fiduciary duty to Ms. Johnson, that Ms. Johnson acted reasonably in relying on her broker's representations that the fees were bona fide, and was not placed on inquiry notice at the time she received her HUD-1 Settlement form. The Court therefore cannot conclude as a matter of law, based solely on the allegations in the Complaint, that Plaintiff's fraud claims accrued on the date of Loan II's settlement, on August 17, 2001.

This case is distinguishable from *Perkins*,[18] in another respect. In *Perkins*, it was clear from the complaint that plaintiff must have been aware of defendant's alleged misrepresentation that he was only obligated to repay $19,768 over a term of two years for a $15,000 loan. *See Perkins*, 697 F. Supp. at 530. "Not only had Perkins continued making monthly payments well beyond the originally represented period of two years,

but he had also made sufficient payments to now exceed the $19,768 he had originally been told was his repayment obligation." *Id.* at 533. Thus, the court concluded as a matter of law that Perkins had *actual* notice he had been wronged. *See id.* at 532-33. This case, in contrast, turns not on actual notice, but on whether Ms. Johnson made a reasonable inquiry, under all the circumstances, into the allegedly excessive charges of Loan II. Ms. Johnson concedes she knew of the charges, but alleges she did not realize they were wrongful. *See* Compl. ¶¶ 25-29. Thus, in this case the broker's alleged fiduciary duty is germane to determining whether Ms. Johnson made a reasonable inquiry into the alleged excessive fees of Loan II at closing, while in *Perkins* the alleged fiduciary duty was irrelevant because plaintiff had actual notice he had been wronged.

   The Court finds the alleged existence of a fiduciary relationship between Mortgage USA and Ms. Johnson germane to the date of accrual of Plaintiff's claims against EquiCredit Corp. arising from Loan I as well. If Mortgage USA owed Ms. Johnson a duty to represent her in her dealings with EquiCredit Corp. and investigate any potential wrongdoing, a reasonable fact-finder could decide that Ms. Johnson did not fail to make a reasonable inquiry into the alleged wrongs herself. In other words, a reasonable fact-finder could conclude that a reasonable inquiry under the circumstances was minimal inquiry, or no inquiry at all. *See Diamond, supra,* 680 A.2d at 372 ("Under our cases, the relevant facts may be such that it may be reasonable to conduct no investigation at all."). If a fiduciary relationship were found to exist, Ms. Johnson's D.C. claims against EquiCredit Corp. might not accrue under the discovery rule at the time of Loan I's closing. Thus, the Court cannot conclude as a matter of law, for purposes of a

---

[18] *Perkins v. Nash,* 697 F. Supp. 527 (D.D.C. 1988).

motion to dismiss, that Plaintiff's D.C. claims against EquiCredit accrued on the date of

loan settlement, April 2, 2001. Defendant's motion to dismiss these claims is denied.

(c)    Matters outside the pleadings

Defendants Long Beach and Washington Mutual have appended a document to

their Motion to Dismiss that may well prove dispositive on the issue of a fiduciary

relationship between Mortgage USA and Ms. Johnson. In Section 2 of the Mortgage

Origination Agreement, signed and dated by Ms. Johnson and a Mortgage USA

representative, Mortgage USA states that it is "acting as an independent contractor and

*not as your agent*" in providing mortgage brokering services. *See* LB Mem. to Dismiss,

Ex. 2 (8/7/01 Mortgage USA "Mortgage Origination Agreement") (emphasis added).

Plaintiff must prove the existence of a fiduciary duty. *See Bynum v. Equitable Mortgage

Group*, 2005 WL 818619 at *19 (D.D.C. April 7, 2005) (citing *Vicki Bagley Realty, Inc.

v. Laufer*, 482 A.2d 359, 363 (D.C. 1984)). The document cited above tends to prove that

no fiduciary duty existed. Because, however, it is a "matter outside the pleading" under

the Federal Rules of Civil Procedure, it may not be considered by this Court in ruling on

Defendants' Rule 12(b)(6) motion.

If on a Rule 12(b)(6) motion, "matters outside the pleading are presented to and

not excluded by the court, the motion shall be treated as one for summary judgment . . .

and all parties shall be given reasonable opportunity to present all material made

pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); *see also Currier v.

Postmaster Gen.*, 304 F.3d 87, 88 (D.C. Cir. 2002). A motion to dismiss is not a

"pleading" as defined by Rule 7(a). Fed. R. Civ. P. 7(a); *see also Adkins v. Safeway, Inc.*,

985 F.2d 1101, 1102 (D.C. Cir. 1993) ("Only complaints, answers, replies to

47

counterclaims, and third-party complaints and third-party answers are pleadings").

Furthermore, the Mortgage Origination Agreement was neither attached as an exhibit to

Plaintiff's original pleading, nor incorporated therein by reference. *See* Fed. R. Civ. P.

10(c); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d

1161, 1164 (4th Cir. 1994) (citing *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48

(2d Cir. 1991) (deeming a complaint to "include . . . any statements or documents

incorporated in it by reference" and permitting a defendant to produce such materials

when attacking the complaint)); *Bynum*, 2005 WL 818619 at *1-2; *see also Miller*, 224 F.

Supp. 2d at 984 n.1 ("[w]hen the bare allegations of the complaint conflict with any

exhibits or documents, whether attached or adopted by reference, the exhibits or

documents prevail") (citations omitted); *Judicial Watch, Inc. v. US Dep't of Commerce*,

224 F.R.D. 261, 263 n.1 (D.D.C. Sept. 30, 2004) (holding that "pleading" includes

"affidavits and declarations filed in support of technical pleadings"). The Mortgage

Origination Agreement, attached to Long Beach's and Washington Mutual's Motion to

Dismiss is therefore a "matter[] outside the pleading" and cannot be considered until both

parties have been given reasonable opportunity to present material pertinent to it.

    3.  D.C. Claims – applicable statutes of limitations

   In the previous section, the Court examined the dates of accrual of Plaintiff's D.C.

Claims, finding that the dates cannot be determined as a matter of law based solely on the

allegations in the Complaint. In this section, the Court determines how long Plaintiff had

from the (as yet undetermined) dates of accrual to sue without violating applicable

statutes of limitations. The Court finds that all of Plaintiff's D.C. claims apart from her

claim under the Usury Statute are governed by the District's residual three-year statute of

limitations; Plaintiff's Usury Statute claim is governed by its own statute of limitations and shall be dismissed.

(a)     Plaintiff's Usury Statute Claims

In Count IV of her Complaint, Plaintiff alleges violations of the D.C. Usury Statute, D.C. Code 28-3301 *et seq.*, on two grounds. First, the Usury Statute requires a lender to comply with the disclosure provision of TILA; Plaintiff, as discussed above,[19] alleges that EquiCredit and Long Beach failed to comply with TILA disclosure requirements. *See* Compl. ¶¶ 54-56, 59. Second, Plaintiff charges Long Beach, through its agents Mortgage USA and Mr. Thompson, with violating Usury Statute prohibitions on charging excessive fees. *See* Compl. ¶¶ 57-59.

First, Plaintiff's claim of violations of Usury Statute disclosure requirements is time-barred. D.C. courts adopt the TILA statute of limitations when applying the Usury Act's provision requiring compliance "with the disclosure provisions of the Truth-In-Lending Act . . . ." *Williams v. Central Money Co.*, 974 F. Supp. 22, 28 (D.D.C. 1997), *aff'd and remanded*, 176 F.3d 497 (D.C. Cir. 1999). As discussed, *see supra* Section III(D)(1)(a), Plaintiff had one year from the date of the respective loan closings to bring an action for civil liability for TILA disclosure violations. As Plaintiff has not done so, this claim is time-barred as a matter of law.

Second, Plaintiff's claim of excessive fees in violation of the Usury Statute is time-barred under the Usury Statute's one-year statute of limitations. A one-year limitations period applies to claims that a person or corporation "directly or indirectly t[ook] or receive[d] a greater amount of interest than is declared by this chapter to be

lawful" under the Usury statute. *See* D.C. Code § 28-3304; *applied in Montgomery Fed. Sav. & Loan Ass'n v. Baer*, 308 A.2d 768, 770, n.6 (D.C. 1973) (citations omitted). That period runs from "the date of payment" of the unlawful interest. D.C. Code § 28-3304. The latest date that Ms. Johnson could have paid interest on her loans is either February 26, 2003, the date she filed for bankruptcy, or in September 2003, when she defaulted on the loan. *See* Pl.'s Opp'n ¶¶ 4-5 ("In September 2003, Ms. Johnson defaulted on the loan [Loan II] and has not made any payments since."). Because Plaintiff did not file this action until March 30, 2005, well over one year after Ms. Johnson's February 26, 2003 bankruptcy and September 2003 default on Loan II, any claims under D.C. Code § 28-3304 alleging that Defendants "directly or indirectly t[ook] or receive[d] a greater amount of interest than is declared" lawful under the Usury Statute are time-barred as a matter of law.

Thus, Count IV of Plaintiff's Complaint is time-barred as a matter of law as to all Defendants and shall be dismissed.

(b)     Plaintiff's Other D.C. Claims

Besides her TILA, Usury Statute, and unconscionability claims, Plaintiff charges Defendants with fraud, breach of fiduciary duty, conspiracy, aiding and abetting deception, negligent supervision, and violations of the D.C. Consumer Protection Act ("DCCPA") and D.C. Consumer Protection Procedures Act ("DCCPPA"). *See supra* at 5 (Table 1).

In the District of Columbia, a residual statute of limitations bars civil actions after three years from the date the action accrues, provided that a different statute of

---

[19] *See supra* Section III(D)(1).

limitations does not govern. D.C. Code § 12-301(8) ("Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues . . . (8) for which a limitation is not otherwise specially prescribed – 3 years"). This statute applies to Plaintiff's claims of negligence, negligent supervision, and violation of the District of Columbia Consumer Protection Act and Consumer Protection Procedures Act, which do not have their own statutes of limitations. *See* D.C. Code § 28-3905(a) (stating the 3-year statute of limitations under D.C. Code § 12-301 applies to DCCPA claims if no complaint is lodged with the Department of Consumer and Regulatory Affairs); *applied in Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 14 (D.D.C. 2000) and *Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 729 (D.C. 2003); *see also Capitol Place I Associates L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 198-99 (D.C. 1996) (actions sounding in negligence are subject to the 3-year statute of limitations in D.C. Code § 12-301(8)); *Powered Stirrups, Inc.*, 424 A.2d 61, 62 n.1 (D.C. 1980) (negligence); *Hunter v. District of Columbia*, 943 F.2d 69, 73 (D.C. Cir. 1991) (negligent supervision); *Fitzgerald v. Seamans*, 384 F. Supp. 688, 692 (D.D.C. 1974) (conspiracy); *Morton v. Nat'l Med. Enterps., Inc.*, 725 A.2d 462, 468 n.18 (D.C. 1999) (fraud).

Plaintiff and Defendants agree that "[n]one of Plaintiffs' claims under District of Columbia law are subject to a specified limitations period. D.C. Code § 12-301 (2001). Except for the usury statute claims governed by regulation under TILA time limits, they are all therefore subject to the general limitations period of three years from accrual. D.C. Code § 12-301(8) (2001)." Pl.'s Opp'n at 19; *see also* LB Mem. to Dismiss at 17;

EC Mem. to Dismiss at 8.  Thus, Plaintiff's D.C. claims, apart from those under the

Usury Statute, are all subject to the D.C. residual three-year statute of limitations.

(c)     The Intertwining Doctrine

The Court now addresses Defendants' argument that the "[n]on-TILA claims" are

"intertwined" with the TILA claims, and therefore governed by the TILA statute of

limitations.  *See* EC Mem. to Dismiss at 7; LB Mem. to Dismiss at 16-17.  Under D.C.

law, "[w]hen a cause of action with no prescribed statute of limitations is 'intertwined'

with one having a prescribed limitations period, District of Columbia courts apply the

prescribed period." *Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002).  A claim is

"intertwined" with another when it is "completely dependent" on or essentially the same

as another, and cannot survive as a separate, independent cause of action.  *See Thomas v.*

*New World Communications*, 681 F. Supp. 55, 73 (D.D.C. 1988) ("Plaintiffs' claim for

emotional distress is thus completely dependent upon and 'intertwined' with their claims

for libel, defamation, and assault and/or battery" and as such "subject to the one-year

limitations period specifically provided for those intentional torts") (citing *Mittleman v.*

*United States*, 104 F.3d 410, 415-17 (D.C. Cir. 1997)); *Grunseth v. Marriott Corp.*, 872

F. Supp. 1069, 1074 (D.D.C. 1995) (applying one-year defamation statute to invasion of

privacy claim as "essentially a type of defamation"); *Saunders v. Nemati*, 580 A.2d 660,

661-62 (D.C. 1990) (an intentional infliction of emotional distress claim "pled as a clear

and distinct tort" is not intertwined with another); *Reaves-Bey v. Karr*, 840 A.2d 701, 704

(D.C. 2004) (intertwining doctrine "do[es] not preclude separate causes of action where

the plaintiff has pled and established separate and distinct claims") (citing *District of*

*Columbia v. Chinn*, No. 01-CV-1154, 839 A.2d 701, 704 (D.C. 2003)).  The purpose of

the intertwining doctrine is to protect the consistency of the D.C. limitations policy by preventing claims turning on identical elements of proof from being allowed under one label but not another. *See Mittleman*, 104 F.3d at 415.

Plaintiff's TILA claims "turn on failures to make disclosures and effectuate rescission." Pl.'s Opp'n at 29. "Each of her D.C. claims, by contrast, involves elements different from or additional to those TILA elements. Additional elements include unconscionable and burdensome terms; impermissibly charged points; closing in Plaintiff's home; an unlicensed mortgage broker; and/or misleading representations as to loan suitability and affordability." *Id.*; Compl. ¶¶ 33-103. Because Plaintiff's non-TILA claims can survive as separate causes of action, the claims are not intertwined with her TILA claims. Indeed, allowing the limitations period set forth in the federal TILA statute to govern Plaintiff's D.C. law claims would effectively override the limitations periods that the D.C. legislature determined should govern those claims, and circumscribe Plaintiff's substantive rights even if Plaintiff had no intention of filing claims under TILA. This would hamper, not further, protection of the D.C. limitations policy. Accordingly, the Court holds Plaintiff's D.C. law claims not "intertwined" with her TILA claims.

In sum, Plaintiff's non-Usury Statute D.C. claims are governed by the District's residual three-year statute of limitations. Because, however, this Court cannot determine as a matter of law when Plaintiff's D.C. claims accrued, *see supra* Section III(D)(2), Defendants' Motions to Dismiss Plaintiff's non-Usury Statute D.C. claims shall be denied.

4.    Plaintiff's arguments for tolling applicable statutes of limitations

Plaintiff contends that the above-cited statutes of limitations should be tolled or modified for several reasons, including that: (a) the Bankruptcy proceeding tolled the statutes, (b) TILA's one-year and three-year statutes of limitations do not apply to an assertion of damages or recission "in recoupment," and (c) all applicable statutes of limitations are subject to equitable tolling. For the reasons set forth below, the Court finds that: (a) the Bankruptcy proceeding did not toll the statutes; (b) claims for damages under TILA cannot be asserted offensively, and TILA does not change the statute of limitations governing any state created right of rescission; and (c) absent proof that both (i) Mortgage USA owed Ms. Johnson a fiduciary duty, and (ii) Mortgage USA acted as EquiCredit Corp.'s or Long Beach Mortgage Company's legal agent, the doctrine of fraudulent concealment shall not toll the statute of limitations. Consequently, none of Plaintiff's arguments for modifying or tolling the applicable statutes of limitations succeed absent proof of both Mortgage USA's fiduciary relationship to Ms. Johnson and agency relationship to EquiCredit Corp. or Long Beach Mortgage Co. The Court earlier found it could not determine the dates of accrual of Plaintiff's claims as a matter of law due to Ms. Johnson's allegation that Mortgage USA owed her a fiduciary duty. The Court now finds that the same allegation for similar reasons prevents resolution of Plaintiff's contention that the statutes of limitations should be equitably tolled.

(a)    Bankruptcy

First, Plaintiff asserts that "[a]ny of Plaintiff's claims not expired when she reopened her bankruptcy can be brought for two years thereafter." Pl.'s Opp'n at 33. Pursuant to 11 U.S.C. § 108(a), "[i]f applicable nonbankruptcy law . . . fixes a period

within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of . . . (1) the end of such period . . . (2) two years after the order for relief."

Here, applicable nonbankruptcy law – the TILA and D.C. statutes of limitations – fixes a period within which Plaintiff may commence an action. *See supra* Section III(D). This action is therefore timely if brought within two years after "the order for relief" in Ms. Johnson's bankruptcy case. Under 11 U.S.C. § 301(b), "the commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." A voluntary case "is commenced by the filing with the bankruptcy court of a petition . . . ." 11 U.S.C. § 301(a). Thus, Ms. Johnson obtained an order for relief on February 26, 2003, the date she filed for Chapter 7 bankruptcy. *See* Pl.'s Opp'n ¶ 4. The bankruptcy code's two-year extension of any limitations periods for Ms. Johnson's claims thus expired on February 26, 2005. Because Plaintiff did not filed this action until March 30, 2005, the bankruptcy code's extension does not save any of her otherwise time-barred claims.

Without citing any authority, Plaintiff contests this conclusion by arguing that "reopening is an order for relief in bankruptcy." Pl.'s Opp'n at 33. To the contrary, "[w]hen a bankruptcy case is reopened, the original date for the 'order for relief' is not altered." *In re Hofmann*, 248 B.R. 79, 87-88 (Bank. W.D. Tex. 2000) (the "proposal that we measure from the order reopening would fundamentally alter some very basic bankruptcy concepts."). Accordingly, Plaintiff's contention that her claims are allowed by the bankruptcy code's two-year extension from filing for bankruptcy fails.

(b)      Damages and Rescission in Recoupment Under TILA

Second, Plaintiff contends that her "claim for damages in recoupment under TILA is not barred by any time limit." Pl.'s Opp'n at 13. Plaintiff bases this contention on 15 U.S.C. § 1640(e), which states that the one-year TILA time limit for claims of civil liability "does not bar a person from asserting a violation of this subchapter *in an action to collect the debt* which was brought more than one year from the date of occurrence of the violation *as a matter of defense* by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640(e) (emphasis added); *see* Pl.'s Opp'n at 13. As the present action is not "an action to collect the debt" from Plaintiff, and moreover Plaintiff's claim for damages is not "a matter of defense," Plaintiff's affirmative claims of civil liability under TILA are time-barred notwithstanding 15 U.S.C. § 1640(e). *Compare Jones v. Progressive-Home Fed. Savings & Loan Assoc.*, 122 B.R. 246 (W.D. Pa. 1990) (allowing recoupment defense to proceed in affirmative action, where lender brought action to recover on loan in concurrent bankruptcy proceeding, but noting wide split of authority on the issue).

Plaintiff's claim for rescission in recoupment under TILA also fails. Plaintiff seizes on 15 U.S.C. § 1635(i)(3) to argue that she may "seek rescission in recoupment." Pl.'s Opp'n at 14, 16. Subsection (i) of 15 U.S.C. § 1635 is captioned "Rescission rights in foreclosure," and applies "after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of" a mortgagee. *See* 15 U.S.C. § 1635(i). Provision (i)(3) reads, "Nothing in this subsection affects a consumer's right of rescission in recoupment under State law." 15 U.S.C. § 1635(i)(3).

As this action has not come "after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of" Ms. Johnson, provision (i)(3) would

seem inapplicable to the present action. Indeed, Plaintiff herself cites *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 n.6 (1998), for the proposition that a rescission claim may be raised in recoupment "*when raised in a foreclosure proceeding* outside the three-year period" (emphasis added). That fact notwithstanding, Plaintiff's rather convoluted argument that she may avoid the TILA time limits by asserting rescission in recoupment under 15 U.S.C. § 1635(i)(3), borrowing a state law recoupment right from the D.C. Usury Act together with the D.C. Consumer Protection Act, fails for a more fundamental reason. *See* Pl.'s Opp'n at 14-18. Simply put, 15 U.S.C. § 1635(i)(3) does not *expand* any rights under state law. Indeed, it does not *affect* those rights at all. This includes statutes of limitations applicable to those rights. Thus, Plaintiff's attempt to use 15 U.S.C. § 1635(i)(3) to extend the statutes of limitations otherwise applicable to any rights of rescission she may have under state law fails. Her rights of rescission under state law must be analyzed separately. This includes the possible right of rescission under D.C. Code § 28-3904(k)(1) (2001), which allows "any other relief which the court deems proper" for violations of the D.C. Consumer Protection Act, D.C. Code § 28-3901 *et seq*. *See supra*, Section III(C)(3); *Duren v. First Gov't Mortg. & Investors Corp.*, 221 F.3d 195 at *3, No. 99-7026 (D.C. Cir. June 7, 2000) ("equitable rescission is available under the CPPA only to the extent that the court deems proper") (internal quotation omitted).

(c)     Equitable Tolling

Plaintiff argues that her "D.C. claims are not time barred because they are subject to equitable tolling." Pl.'s Opp'n at 30. Plaintiff contends that her claims are subject to equitable tolling for two reasons: first, "because Defendants in ongoing fashion fraudulently and actively concealed the existence of claims and pertinent facts in order to

carry out the deceptive and exploitative purposes of the loans in question," and second because "Defendants had notice of" Plaintiff's claims when Ms. Johnson "filed her first action. . . ." *Id.*

Plaintiff argues first that her claims "are subject to equitable tolling by virtue of fraudulent concealment." *Id.* A statute of limitations may be equitably tolled "when the party claiming the protection of the statute of limitations has employed 'affirmative acts . . . to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action.'" *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 773 (D.C. 1998) (quoting *Estate of Chappelle v. Sanders*, 442 A.2d 157, 158 (D.C. 1982)). According to *Cevenini*, "It has consistently been the law in the District of Columbia that fraudulent concealment requires 'something of an affirmative nature designed to prevent discovery of [a] cause of action.'" *Id.* (quoting *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191-92 (D.C. 1980)). The doctrine of fraudulent concealment is "[c]losely related to the discovery rule," and "is frequently applied where the conduct of a fiduciary is alleged to have lulled the plaintiff into failure to protect his interests within the statutory limitations period." *Ray v. Queen*, 747 A.2d 1137, 1142 (D.C. 2000). The overlap between this doctrine and the discovery rule is especially apparent because, for the doctrine of fraudulent concealment to apply, the court must find that the plaintiff "had neither actual nor constructive knowledge of the facts constituting [her] cause of action despite her due diligence." *Hoffman v. United States*, 266 F. Supp. 2d 27, 42 (D.D.C. 2003) (internal quotation omitted).

Here, Plaintiff's argument for fraudulent concealment may be difficult to establish, for three reasons. First, the doctrine does not apply to acts of concealment by a

person other than the defendant. *See Cevenini*, 707 A.2d at 773. Mortgage USA's

alleged fraudulent acts may trigger later accrual of Plaintiff's claims under the discovery

rule, but they cannot be used to invoke the doctrine of fraudulent concealment, absent

proof of an agency relationship to the lenders. Second, Plaintiff has alleged few

*affirmative acts* by Defendants as required by the doctrine. Plaintiff's allegation that

Defendants failed to make required disclosures at the time of the loans is insufficient.

*See* Compl. ¶¶ 25-29, 37, 41; Pl.'s Opp'n at 31. Extending the statute of limitations on

non-disclosure due to a defendant's non-disclosure surely is contrary to the intention of

the legislature in enacting that statute. As the court stated in *Evans v. Rudy-Luther*

*Toyota Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999), for this Court to hold otherwise

"would effectively nullify the one-year limitations period that was enacted by Congress,

as virtually every late-filed TILA claim could, under such an interpretation, elude the

application of the limitations period through a claimed equitable tolling." Plaintiff's

allegation that Mortgage USA broker Kenneth Thompson fraudulently assured Ms.

Johnson that loan charges were bona fide could be sufficient if, as discussed *supra*

Section III(D)(2)(b), Mortgage USA had a fiduciary duty to Ms. Johnson. Thus, in order

for the statutes of limitations on Plaintiff's claims to be subject to equitable tolling

through the doctrine of fraudulent concealment, Plaintiff must establish (i) Mortgage

USA's fiduciary duty to Ms. Johnson, (ii) Mortgage USA's agency relationship to the

lenders, and (iii) that Ms. Johnson "had neither actual nor constructive knowledge of the

facts constituting [her] cause of action despite her due diligence." Based on the filings

before the Court (including the Mortgage Origination Agreement which the Court cannot

now consider), this seems a tall order, but would have the advantage for Plaintiff of

possibly equitably tolling the TILA limitations period on claims of civil liability. *See*

*Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177 (D. Minn. 1999) (finding TILA

limitations period subject to equitable tolling).

Regardless, the statutes of limitations on Plaintiff's claims will in no case be

tolled because "Defendants had notice of" Plaintiff's claims when Ms. Johnson "filed her

first action . . . ." Pl.'s Opp'n at 30. District of Columbia precedent firmly holds that

statutes of limitations are not equitably tolled when a similar cause of action, filed within

the limitations period, has been dismissed for lack of subject matter jurisdiction. *See*

*Bond v. Serano*, 566 A.2d 47, 47 (D.C. 1989) (citing *Namerdy v. Generalcar*, 217 A.2d

109, 113) (D.C. 1966)); *Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981) ("We

therefore hold, as we believe the District of Columbia courts would hold, that under

District of Columbia law the pendency of an action involuntarily dismissed without

prejudice does not operate to toll the running of the statute of limitations"). This holding

applies in this case, as Plaintiff's earlier action, Civil Action 04-609, filed April 15, 2004,

was later dismissed without prejudice due to lack of standing. Likewise, this Court is not

inclined to toll statutes of limitations because the bankruptcy proceeding was

"complicated," or because Defendants exercised their legal rights to oppose reopening of

that proceeding. *See* Pl.'s Opp'n at 32. The statutes of limitations applicable to

Plaintiff's claims are therefore not subject to equitable tolling because Plaintiff filed an

earlier lawsuit that put Defendants on notice of her claims.

In sum, absent a showing of fraudulent concealment as discussed, none of

Plaintiff's arguments for modifying or tolling the applicable statutes of limitations

succeed. Consequently, absent a showing of fraudulent concealment, the statutes of

limitations discussed above for Plaintiff's TILA and D.C. claims, *see supra* Section

III(A)(1), apply.

> E.     *Plaintiff's Derivative Claims Pursuant to D.C. Code §§ 28-3808 and 28-3809, and 16 C.F.R. § 433*

In Count XIII of her Complaint, Plaintiff reasserts against Washington Mutual

and/or "Long Beach" all claims and defenses which she has against the other defendants

with respect to Loans I and II. *See* Compl. ¶ 116-119. For the reasons that follow, (1)

Plaintiff's derivative claims against Washington Mutual pursuant to D.C. Code § 28-3808

are dismissed, (2) Plaintiff's derivative claims against Washington Mutual pursuant to

D.C. Code § 28-3809 are dismissed, but Plaintiff's derivative claims against Long Beach

Mortgage Company pursuant to D.C. Code § 28-3809 survive, and (3) Plaintiff's

derivative claims pursuant to 16 C.F.R. § 433.2 are dismissed as to all Defendants.

> 1.     <u>Plaintiff's Derivative Claims Against Washington Mutual Pursuant to D.C. Code § 28-3808</u>

D.C. Code § 28-3808 provides in pertinent part that "an assignee of the rights of

the seller or lessor is subject to all claims and defenses of the consumer arising out of the

sale . . . ." D.C. Code § 28-3808(a) (2001). Subsection (b) requires that rights of the

consumer against an assignee "can only be asserted as a matter of defense to or set-off

against a claim by the assignee." D.C. Code § 28-3808(b) (2001).

Plaintiff's assertion of derivative claims against Washington Mutual pursuant to

D.C. Code § 28-3808 fails because Plaintiff cannot assert claims against an assignee

except "as a matter of defense to or set-off against a claim by the assignee." D.C. Code §

28-3808(b) (2001). Even if Washington Mutual is an assignee of Ms. Johnson's loan,

which Defendants contest, *see* LB Reply at 16, Washington Mutual has not asserted any

claims against Plaintiff. By the express terms of the statute, Plaintiff therefore cannot assert derivative claims against Washington Mutual. Plaintiff's derivative claims against Washington Mutual pursuant to D.C. Code § 28-3808 are therefore dismissed.

     2.    Plaintiff's Derivative Claims Against Washington Mutual and Long Beach Mortgage Company Pursuant to D.C. Code § 28-3809

D.C. Code § 28-3809 provides in pertinent part that "A lender who makes a direct installment loan for the purpose of enabling a consumer to purchase goods or services is subject to all claims and defenses of the consumer against the seller arising out of the purchase of the goods or service if such lender acts at the express request of the seller . . . ." D.C. Code § 28-3809(a) (2001). Subsection (b) requires that the "[r]ights of the debtor can only be asserted affirmatively in an action to cancel and void the sale from its inception, or as a matter of defense to or set-off against a claim by the lender." D.C. Code § 28-3809(b).

Plaintiff alleges that Long Beach sold the mortgage note from Loan II to Washington Mutual. Compl. ¶ 117. This alleges, equivalently, that Washington Mutual is the assignee of the contract between Ms. Johnson and Long Beach. Importantly, Plaintiff does not allege that Washington Mutual is a "lender." Thus, D.C. Code § 28-3809 does not allow any derivative claims against Washington Mutual. *See also Jackson v. Culinary School of Wash.*, 788 F. Supp. 1233, 1249 (D.D.C. 1992), *remanded by* 27 F.3d 573 (D.C. Cir. 1994), *cert. granted, judgment vacated on other grounds by* 515 U.S. 1139 (1995), *on remand to* 59 F.3d 254 (D.C. Cir. 1995).

Plaintiff also appears to allege (somewhat obscurely, though more in keeping with the statute) derivative liability against lender Long Beach Mortgage Company based on

D.C. Code § 28-3809.  In paragraph 118 of her Complaint, "Plaintiff asserts and hereby

reasserts against Long Beach, all claims and defenses she has against the other defendants

with respect to Loans I and II." Compl. ¶ 118.  While Count XIII is entitled only

"Derivate Claims Against Washington Mutual," and is less than forthright in asserting a

claim against Long Beach, construing the Complaint favorably to Plaintiff, it can be read

to assert a valid claim against Long Beach Mortgage Company under D.C. Code § 28-

3809.  Because (1) Long Beach Mortgage Company is the alleged lender for Loan II, (2)

Plaintiff asserts her rights against Long Beach Mortgage Company "affirmatively in an

action to cancel and void the sale from its inception," and (3) the terms "goods and

services" are interpreted broadly under the DCCPPA to include real estate mortgage

finance transactions, *see DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699,

703 (D.C. 1999); D.C. Code § 28-3901(7) (defining "goods and services"), Plaintiff's

claims of Long Beach Mortgage Company's derivative liability for the acts of Mortgage

USA pursuant to D.C. Code § 28-3901 shall not be dismissed.

3.   Plaintiff's Derivative Claims Against Washington Mutual and/or
       Long Beach Mortgage Loan Trust 2001-4 Pursuant to 16 C.F.R. §
       433.2

Pursuant to 16 C.F.R. § 433.2(a), "In connection with any sale or lease of goods

or services to consumers . . . it is an unfair or deceptive act or practice" to "(a) Take or

receive a consumer credit contract which fails to contain the following provision . . .

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
> SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
> COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
> OBTAINED HERETO OR WITH THE PROCEEDS HEREOF. . . ."

16 C.F.R. § 433.2(a). Plaintiff's derivative claims under the above section fail because a "consumer credit contract" made in connection with any sale of "goods and services" does not include a mortgage loan agreement not made in connection with a sale of goods or services.

Unlike the more expansive reading given the terms "sale" and "goods and services" under the DCCPPA, these terms carry their plain meaning in the federal regulations. Pursuant to 16 C.F.R. § 433.1(i), a "Consumer credit contract" is defined as any instrument which evidences a debt arising from either (1) a cash advance received by the consumer which is applied to a purchase of goods or services from a seller affiliated with the creditor, or (2) extending credit to a consumer in connection with a "Credit Sale," of goods or services, such as an automobile or an insurance policy. *See* 16 C.F.R. § 433.1(i); 16 C.F.R. § 433.1(d); 16 C.F.R. § 433.1(e); 15 U.S.C. § 1602(g) (TILA) and 12 C.F.R. § 226.2(a)(16) (TILA Regulation Z) (defining "Credit Sale"); *Streit v. Fireside Chrysler-Plymouth, Inc.*, 697 F.2d 193, 193 (Ill. 1983) (applying provision to sale of automobile); *Cody v. Comm. Loan Corp. of Richmond County*, 606 F.2d 499 (Ga. 1979) (applying provision to sale of insurance). TILA expressly distinguishes between "sales" of goods or services and "mortgage transactions." *See* 15 U.S.C. § 1602(g) (defining "credit sale"); 15 U.S.C. § 1602(w) (defining "residential mortgage transaction"); 15 U.S.C. § 1602(aa) (defining "mortgage").

The Court sees no reason to twist the definitions of "sale" and "goods and services" away from their plain meanings and statutorily provided definitions, and detects no intention on the part of Congress to do so. Plaintiff herself has offered no argument or analysis placing the transaction at issue within the provisions of 16 C.F.R. § 433.2. As

such, the Court finds that the consumer credit transaction at issue is not a "consumer

credit contract" made "in connection with the sale of goods or services." Plaintiff's

derivative claims pursuant to 16 C.F.R. § 433.2 against Washington Mutual (and/or Long

Beach Mortgage Company) consequently fail.[20]

Table 2: The Court's Disposition

| Count | Title / Legal Basis | Disposition | Reason |
|---|---|---|---|
| I | Violations of the District of Columbia Consumer Protection Act, D.C. Code Sections 3901 *et. seq.* | Not Dismissed* | |
| II | Common Law Fraud | Not Dismissed* | |
| III | Unconscionability | | |
| | a. Under D.C. Code § 28:2-302 | Dismissed | U.C.C. Article 2 applies to sale of goods, not loans |
| | b. Under the common law | Not Dismissed* | Declaratory relief may be available |
| | c. Under D.C. Code § 28-3904(r) | Not Dismissed* | 28-3904(r) allows affirmative action |
| IV | Violation of the Usury Statute | Dismissed | Statute of limitations |
| V | Violations of D.C. MLBA | Dismissed | Failure to serve |
| VI | Breach of Fiduciary Duty | Dismissed | Failure to serve |
| VII | Conspiracy | Not Dismissed* | |
| VIII | Aiding & Abetting the Deception of Ms. Johnson | Not Dismissed* | |
| IX | Negligence | Not Dismissed* | |
| X | Negligent Supervision | Not Dismissed* | |
| XI | TILA Violations – Civil Liability | Dismissed | Statute of limitations |
| XII | Declaratory Relief of a Valid Rescission | | |

[20] Independently, the Court notes that 16 C.F.R. § 433 "does not provide a remedy as a matter of federal law." *See Jackson v. Culinary School of Wash.*, 788 F. Supp. 1233, 1249 (D.D.C. 1992), *remanded by* 27 F.3d 573 (D.C. Cir. 1994), *cert. granted, judgment vacated on other grounds by* 515 U.S. 1139 (1995), *on remand to* 59 F.3d 254 (D.C. Cir. 1995); *see also Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 543 (Mass. 1989) (finding plaintiff's "contention that the language mandated by 16 C.F.R. § 433.2, affords them a right to affirmative recovery is without merit.").

|  | Under TILA | | |
|---|---|---|---|
|  | a.  Loan I, against EquiCredit Corp. | Not Dismissed | |
|  | b.  Loan II, against Washington Mutual | Dismissed | Statute of limitations |
| XIII | Derivative Claims | | |
|  | a.  Under D.C. Code § 28-3808 | Dismissed | 28-3808 claims are available only "as a matter of defense" |
|  | b.  Under D.C. Code § 28-3809 against Washington Mutual | Dismissed | Washington Mutual is not a "lender" |
|  | c.  Under D.C. Code § 28-3809 against Long Beach Mortgage Company | Not Dismissed* | |
|  | d.  Under 16 C.F.R. § 433.2 | Dismissed | Loan II is not a "consumer credit contract" made "in connection with the sale of goods or services" |
| I-XIII | Plaintiff's arguments for tolling or modifying statutes of limitations | | |
|  | a.  Bankruptcy | Fails | |
|  | b.  Damages or Rescission in Recoupment | Fails | |
|  | c.  Equitable Tolling | Possible** | |

* denotes that survival of this Count depends on the existence of the alleged fiduciary relationship between Mortgage USA and Viola Johnson

** denotes that survival of this theory depends on (i) the existence of the alleged fiduciary relationship between Mortgage USA and Viola Johnson, and (ii) the existence of an agency relationship between Mortgage USA and EquiCredit Corp. or Long Beach Mortgage Company

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Motion to Dismiss with respect to Count IV and Count XI, grant-in-part and deny-in-part Defendant's Motion to Dismiss with respect to Counts XII and XIII, and deny Defendant's Motion to Dismiss with respect to the remaining Counts. The Court notes that on July 19, 2006, the Court dismissed the instant case with respect to Mortgage USA for failure to serve process. As a result, Counts V and VI were eliminated in their entirety. *See* Order of July 19, 2006, Civil Case No. 05-644 (CKK). The Court refers the parties to Table 2, located on pages 6-7 and repeated on pages 65-66 of this Opinion, for a comprehensive summary of the Court's disposition. An appropriate Order accompanies this Memorandum Opinion.

Date:   August 4, 2006

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge